**Bobby Maddox, a Minor, by His Mother and Next Friend, Daisy Maddox, Plaintiff-Appellant, v. Dorothy N. Smith, Defendant-Appellee.**

**Gen. No. 65–68.**

Second District.

February 7, 1966.

Crowe and Strass and John C. Mullen, both of Dundee, for appellant.

Rathje, Woodward & Dyer, Associates, of Wheaton, for appellee.

MR. JUSTICE MORAN delivered the opinion of this court.

Plaintiff Bobby Maddox, a four-year-old minor, was struck by an automobile driven by the defendant while he was running across South Seventh Avenue in St. Charles. He filed suit for his personal injuries through his mother and next friend. A jury found the issues in favor of the defendant. After the denial of his motion for a new trial, this appeal followed.

Plaintiff charges as grounds for reversal that the trial court erred in denying plaintiff's motion for a directed verdict, in refusing to give certain instructions tendered by plaintiff and that the verdict was the result of passion and prejudice induced by improper arguments of counsel for defendant, as well as improper statements made by a perspective petit juror in another case.

Plaintiff contends he was entitled to a directed verdict in his favor since he was under the age of seven years; and therefore, incapable of being guilty of contributory negligence and because there is evidence in the record of the defendant's negligence.

Defendant was the only eyewitness to the occurrence. She testified that she resided on South Fifth Place in St. Charles about two blocks from the accident scene. She had traveled on South Seventh Avenue regularly and on the day in question she left her home around 9:00 o'clock in the morning for her mother-in-law's home. Her fourteen-month-old son was sitting in the front seat of the automobile beside her. She traveled northeasterly on South Fifth Place and stopped at the intersection of South Seventh Avenue to let a car proceeding from the opposite direction pass before turning north onto South Seventh Avenue.

She went on to testify that South Seventh Avenue is a two-lane paved residential street and that the accident occurred about a block from South Fifth Avenue. She stated that when she first saw the plaintiff she was traveling between 20 and 25 miles per hour and was 50 to 100 feet from him. He was standing on the east side off the roadway on the grass. He was then standing still, looking across the street to the west. She further testified that she did not anticipate the plaintiff crossing the street and that she had taken her foot off the gas pedal as an automatic reaction because a child is so unpredictable. She disclosed that about the time she had her foot off the gas pedal, the plaintiff ran in front of her and she applied the brake. She also pulled her car to the left trying to avoid hitting him and claimed there was no time to sound her horn. She stated she could not tell if the plaintiff looked in her direction before he was hit but believed that he did not. She related that her car was skidding when the impact occurred but did not know how far she traveled after the impact.

A police officer who investigated the occurrence testified that South Seventh Avenue is a heavily traveled road with a speed limit of thirty miles per hour. He noticed that there were blood spots approximately 24 feet in front of the car and some 9 feet from the west curb. He paced off skidmarks and found them to be 30 to 33 feet. He testified that based on his study of charts pertaining to stopping distances of cars with good brakes on dry pavement, a car traveling twenty-five miles per hour would require 40 to 42 feet to stop after the brake pedal is applied and that a car traveling thirty miles per hour would require 60 feet to stop after the brake pedal is applied.

Another witness, Erskine Pritchett, testified that he came to the scene after the accident. He saw skidmarks and measured them with a tape. The skidmarks began close to the south side of a driveway and extended 40 to

45 feet to the northwest of the driveway. He says the skidmarks were 54 feet long.

■■ It would appear that when the defendant first saw the boy she was driving her car within the posted speed limit on a dry pavement during the daylight hours. The boy was standing on the grass parkway. Defendant was under no obligation under these circumstances to sound her horn at that time since Chapter 95½, Section 212 of the Illinois Revised Statutes applies only where the pedestrian is on the roadway. The defendant did, according to her testimony, take her foot from the accelerator and when she observed the boy suddenly dart into the roadway she applied her brakes sufficiently hard to lay down skidmarks and she turned to the left in an effort to avoid him. She testified that she did not at that time have an opportunity to sound her horn. We do not find her guilty of negligence as a matter of law in failing to sound her horn under those circumstances.

■ Further, there is no satisfactory evidence that the defendant was guilty of driving at an excessive speed. From the testimony of the police officer and the witness Pritchett it would appear that the skidmarks were either 30 to 33 feet in length or 54 feet in length. Based on this evidence the defendant was traveling either slightly less than twenty-five miles an hour or slightly less than thirty miles per hour and either speed was a lawful speed under the circumstances.

■ We believe that whether defendant was negligent in the operation of her automobile was properly a question of fact for the jury to decide. In the case of Turner v. Seyfert, 44 Ill App2d 281, 194 NE2d 529 (1963), the court stated at page 285:

"When the evidence is all in, and a motion for a n. o. v. or for a directed verdict is made by the plaintiff, the trial court must consider all of the evidence in its aspect most favorable to the defend-

379

ant, together with all reasonable inferences to be drawn therefrom, and if when so considered there is any evidence standing alone and considered to be true, together with the inferences that may legitimately be drawn therefrom, the court should not grant the motion."

We next direct our attention to Plaintiff's Instructions No. 8 and No. 10 refused by the trial judge. Instruction No. 8 contained only the second paragraph of IPI Instruction No. 70.03. The court did allow Plaintiff's Instruction No. 13, which contained both paragraphs of IPI No. 70.03. This was proper. Deeke v. Steffke Freight Co., 50 Ill App2d 1, 199 NE2d 442 (1964).

Plaintiff attempts to distinguish the Deeke case ruling upon the difference of the facts between the two cases. We have examined this argument carefully and cannot accept it. We affirm the reasoning of the opinion in the Deeke case in pointing out that the two provisions of the statute are applicable and should not be separated in this type of case since the one counterbalances the other. The two provisions of the statute, taken together, make it clear that the right-of-way given to the pedestrian at a crosswalk and not other points and the right-of-way given to vehicles at a crosswalk and not other points are not absolute rights. Plaintiff's tendered Instruction No. 10 was as follows:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

"Every automobile of the first and second division when operated upon a highway shall be equipped with a horn in good working order and capable of emitting sound audible under normal conditions from a distance of not less than 200 feet.

380

"The Driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use such horn when upon a highway.

"If you decide that Mrs. Smith violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not Mrs. Smith was negligent before and at the time of the occurrence."

██ ██ While it is true, as defendant argues, that the first sentence of the statute, Chapter 95½, Section 212a, Ill Rev Stats, was not directly supported by proof in this case, the second sentence of the statute was applicable and was pleaded and argued by the plaintiff. The trial court should properly have given this instruction; however, we feel that the error was not prejudicial or reversible and did not deprive plaintiff of a fair and impartial trial, since Plaintiff's Instruction No. 13, pertaining to the use of the horn and containing the language of the statute, Chapter 95½, Section 172, Ill Rev Stats, did contain some reference to the use of the horn.

Plaintiff's third contention is based on possible prejudice or bias existing in the minds of the jurors. It appears from affidavits in the record that a few days prior to the commencement of the instant case during the voir dire examination of the jurors in another case, one of the prospective jurors delivered a diatribe against plaintiffs who filed suits against insured defendants. This particular prospective juror was a secretary for an insurance adjusting firm. She spoke for several minutes making derogatory statements about persons and their attorneys who file suits for personal injuries in anticipation of recovering substantial compensation from insurance companies.

The affidavits assert that one or more of the jurors in the instant case were on the same jury panel and were present in the court room at the time of the prospective juror's oration. Further, that these circumstances were unknown to plaintiff's counsel at the time of the selection of the jury in this case. Counsel's affidavit states that had he known of these facts during the trial he would have moved for a mistrial and requested the case be continued until such date as a new panel of jurors would be available for service.

It is suggested that all of the jurors on the panel either heard the prejudicial statements of the adjusting firm's secretary or were allowed to commingle with jurors who had heard these statements.

We do not question but that these statements were prejudicial in the case in which they were made and we note that the trial court declared a mistrial in that case. There is no adequate showing, however, that such statements resulted in any bias or prejudice in this case. The voir dire examination of the jurors in this case was not included in the report of proceedings and we cannot presume that the trial judge and the attorneys failed to interrogate the jurors as to their qualifications and freedom from bias and prejudice prior to their being accepted.

Jurors come from all walks of life and have a multitude of experiences. The jurors were specifically instructed in this case in Plaintiff's instruction that in considering the evidence in the case they were not required to set aside their own observation and experience in the affairs of life. It would be difficult for an observant person to long exist in our society without being subjected to both direct and implied pressures either in favor of or against personal injury claims and litigation. Newspapers and other media constantly report jury verdicts and often the ad damnum stated in personal injury complaints filed. On the other hand, articles pertaining

to insurance premiums and advertisements sponsored by various segments of the insurance industry are commonly found. We cannot presume that all prospective jurors are oblivious to this written and spoken word, however, we can presume in the absence of any specific showing to the contrary that in any given case the individual members of the jury will faithfully perform their duties of fairness and impartiality to the best of their ability. See People v. Ward, 32 Ill2d 253, 204 NE2d 741 (1965).

Christian v. New York Cent. R. Co., 28 Ill App2d 57, 170 NE2d 183 (1960) is to be distinguished in that there the voir dire examination of jurors was conducted in violation of Supreme Court Rule 24–1. The plaintiff's attorney was "permitted to run rampant in the selection of this jury" and the trial judge's comments to prospective jurors were also held to be improper. Similarly People v. Kirkpatrick, 413 Ill 595, 110 NE2d 519 (1953), is also distinguishable. In that case there had been a prior trial and conviction of another defendant jointly accused of the same crime in which the defendant was called as a witness and forced to claim his constitutional privileges. Likewise, Murphy v. Lindahl, 24 Ill App2d 461, 165 NE2d 340 (1960), and City of Quincy v. V. E. Best Plumbing & Heating Supply Co., 17 Ill2d 570, 162 NE2d 373 (1959), are not applicable.

 Appellant's final contention is that defendant's counsel was guilty of improper conduct causing passion and prejudice on the part of the jury. The alleged statements of counsel pertained to his speculation as to where the boy might have been before the accident and in arguing about the defendant's reaction time in applying the brakes on her automobile. We find no reversible error in these remarks and feel that these remarks were within the broad latitude granted to attorneys during their final arguments in drawing reasonable inferences and conclusions from the testimony. Reinmueller v. Chi-

cago Motor Coach Co., 341 Ill App 178, 93 NE2d 120 (1950).

The judgment of the Circuit Court of Kane County is affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and DAVIS, J., concur.