LEWIS HALL, a minor, by RAYMOND HALL, his father and next friend, Plaintiff-Appellee, v. FRANK RANDELL, Defendant-Appellant.

(No. 58003;

First District (3rd Division)—February 6, 1975.

Baker & McKenzie, of Chicago (Francis D. Morrissey and James Dupree, of counsel), for appellant.

Hickey, Gustafson & Peterson, of Chicago (Joseph B. Lederleitner, of counsel), for appellee.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Lewis Hall, by his father and next friend, brought this action against Frank Randell, asking $100,000 in damages for personal injuries sustained when he was allegedly struck by Randell's auto. After both parties had presented their cases the trial court directed a verdict for the plaintiff on the issue of liability. The jury awarded him $13,000 in damages, upon which the court entered judgment. Randell has appealed from the judgment and from the denial of his post-trial motion.

Two issues are dispositive of the appeal: whether the court erred in directing a verdict in favor of the plaintiff and whether it erred by refusing to direct a verdict for the defendant at the close of the plaintiff's case.

The accident occurred on South State Street, Chicago, between the 39th and 41st Street intersections, at approximately 8:15 A.M. The area was a school zone which had a 20-mile per hour speed limit at that time of day. Lewis Hall, 8 years old, and his brother Calvin, 11, left their home in the 4000 block of South Federal Street, walked to State Street and crossed to a grocery store on the east side of State. After making a purchase, the boys recrossed State, traversing it at a point near the middle of the block. In that block, there are four traffic lanes. A raised concrete divider, approximately 5 feet wide, separates northbound and south-

bound traffic. Lewis held his brother's hand as they crossed the north-bound lanes to this divider.

Meanwhile, Randell and three coworkers were driving home from their place of work in Randell's car. Randell testified that they were not conversing and the radio was not on. He drove east on 39th Street, paused at its intersection with State for a traffic light, turned right when the light changed and headed south on State. As he completed his turn he swung his car into the lane adjacent to the divider and proceeded at approximately 15 miles per hour, knowing from experience that this was a school zone frequented by children at that hour of the morning. He said lighting conditions were adequate and the weather not inclement except for gusts of wind, but the gusts were not strong enough to sway his car.

Lewis testified that he and his brother stopped after reaching the safety island and stood there until he was struck on the left leg by the front of an oncoming car. He said he had seen the auto coming but did not remember hearing either a horn or the sound of brakes before being hit. His testimony was impeached by an earlier sworn statement, taken 2 months before trial, in which he said that he had not seen a car coming and that he had stepped off the divider.

Calvin, 16 years old at the time he testified, gave differing versions of the occurrence. His testimony was not only internally inconsistent but it varied from his brother's account. On direct examination he related that as he and Lewis stood on the island, he looked for traffic, saw none, and they then "stepped two inches" into the street. Then he saw four or five cars speeding toward them and leaped back onto the divider, but one of them hit his brother. Further along in Calvin's examination, the 2 inches became two or three steps. Then he disclosed that after stepping into the street he had dropped the bag containing the items they had just bought, and that after picking up the contents he noticed the oncoming cars. His final story was that he dropped the bag as they stood on the island and he alone stepped into the street to retrieve it, after which they both stepped off the safety island together. Asked where the several speeding cars had come from, he responded "slow down the lane." A question by the court drew a third response:

"The Court: Where did the car come from that hit him?

A. It must have been parked."

Finally, he returned to his first position that the car was speeding. He said the car was 30 feet away when he first noticed it, but later changed his estimate to 15 feet. After a leading question by counsel, he decided the car had come up onto the divider:

"Q. In fact, did that car come onto that concrete thing you were on?

A. Yes, it—little, halfway."

Calvin also testified that there were no passengers in the car and that he heard neither horn nor brakes.

Randell testified that there were three boys standing on the divider, holding hands with one another. As he approached them he took his foot from the accelerator, lowering his speed from 15 to about 5 miles an hour. The front of his car had passed the youths when he heard a noise against the side of the auto. It sounded like a rock had been thrown against the rear door, and he stopped to investigate. He then saw one boy lying on the ground unconscious, being held by his two companions.

Randell argues that no evidence was offered that it was he who drove the car which struck the boy. In the face of Randell's denials of the allegations of the complaint, the plaintiff bore the burden of proving that it was indeed Randell who proximately caused his injuries. This obligation was discharged with some laxity, but the testimony demonstrates that the contact between Lewis and Randell's car was not treated as an issue. The central question pertaining to liability was not whether the auto struck the boy, but whether the impact came about as a result of Randell's negligence. No conclusion can be drawn from the evidence other than that Randell's auto was the one involved in the accident.

■■■ Each party asserts that the evidence required a directed verdict in his favor. The plaintiff takes the position that there was no question of fact relating to the negligence of Randell, since he admitted that he drove past the boys after seeing them, failed to stop, sound his horn or change lanes. *Haywood v. Fidelity Mutual Insurance Co.* (La. App. 1950), 47 So.2d 59, is cited for the rule that when a motorist sees a child along a highway he must bring his car under such control that an accident can be avoided regardless of any unexpected action on the part of the child. However, in Illinois there is no strict liability of motorists to minor pedestrians. (*Leonteos v. Haase* (7th Cir. 1969), 410 F.2d 633.) Rather, a driver owes a duty of reasonable care to avoid injuring children whom he sees on or near a street or highway and he must, of course, exercise greater care for the safety of young children than for adults. (*Stowers v. Carp* (1961), 29 Ill.App.2d 52, 172 N.E.2d 370.) Whether a motorist has met the standard must be determined in light of the peculiar circumstances of each case and is a question properly reserved for the jury. Jury verdicts in favor of defendants have been upheld on appeal despite evidence showing that the minor plaintiffs stood at the curb, visible to oncoming traffic, before they darted in front of the vehicles which struck them. (*Leonteos v. Haase; Piechalak v. Liberty Trucking Co.* (1965), 58 Ill.App.2d 289, 208 N.E.2d 379; *Maddox v. Smith* (1966), 67 Ill.App.2d 374, 214 N.E.2d 5.) That the motorist failed

to give warning with his horn when he first saw the child at a roadside (*Maddox v. Smith*), or the child stood near a crosswalk (*Leonteos v. Haase*), will not justify a court's declaration of negligence as a matter of law, where other evidence supports a jury finding that the driver acted reasonably under the circumstances.

An 8-year-old child is not held to the same accountability for due care as an adult (*Perricone v. DiBartolo* (1973), 14 Ill.App.3d 514, 302 N.E.2d 637), but it does not follow that because someone injures a child of 8 he is necessarily liable. The mere occurrence of an automobile accident in which a child is injured does not give rise to an inference of negligence on the part of a motorist. It remains the plaintiff's burden to prove the motorist's negligence and his responsibility for the plaintiff's injuries. *Grill v. Bradley* (1959), 22 Ill.App.2d 535, 161 N.E.2d 347.

Attacking Randell's account of the incident as unworthy of belief, counsel for Lewis queries how a left leg could be injured in a supposed contact with the left side of a car. But Lewis' own brother, when asked what part of the car hit Lewis, answered that "[i]t was in the middle * * *." In any event, Lewis' story that he was struck by the front of the auto seems equally dubious, when the physical evidence is taken into account. According to all the witnesses the car approached from the boy's right. He was facing the west side of the street as the southbound car traveled toward him. Therefore his right leg, not his left, would have been closer to the oncoming vehicle. Yet the left leg was the one struck. Further, the leg was fractured just above the ankle, which calls into question his story that he was struck by the front of the auto as he stood passively by. If the vehicle rolled along the same plane on which he stood, whether on the street or the raised divider, an impact with the auto's front bumper would be expected to occur well above the ankle—probably in the region of the calf or knee. Combining the unexplained curiosities with Randell's testimony, it is at least equally plausible to infer that the boy on a childish impulse attempted to kick the car as it passed by him and broke his ankle in the process.

■■ After making allowance for their ages, the testimony of Lewis and his brother was vague and conflicting. Calvin, in particular, provided such a confused account of the accident that a jury acting reasonably could disregard his testimony entirely. Our review of the evidence convinces us that the court erred by directing a verdict for the plaintiff on the issue of liability.

■■ On the other hand, we do not find the direction of a verdict for the defendant to be warranted. Randell argues that the plaintiff failed to make out a prima facie case. He declares there was no evidence to prove his own negligence, a causal relation between his acts and the boy's in-

juries, or the boy's freedom from contributory ngligence. As indicated by our previous discussion, the fact that the plaintiff was a young boy does not absolve him of the need to prove that Randell acted negligently. Yet the evidence could support a jury finding that Randell failed to use reasonable care under the circumstances. He saw the children crossing at mid-block, away from an intersection or crosswalk. That, plus their obvious youth, forewarned him that they might not exercise complete caution as he approached them. He reacted by slowing his vehicle, but did not trouble to sound his horn or change lanes, two simple and convenient responses to the situation. He continued to drive very close to the divider—a distance of only 6 inches—as he passed the boys, and this despite his awareness of blustery winds. While open to question, Lewis Hall's account of the occurrence is not inherently improbable. Allowing all favorable inferences to him, we conclude that he presented a prima facie case sufficient to withstand the defendant's motion for a directed verdict.

Since neither party is entitled to a finding in his favor as a matter of law, our order will be one of reversal and remandment of the cause for retrial on all the issues.

The judgment of the circuit court is reversed and the cause remanded.

Reversed and remanded.

McNAMARA and MEJDA, JJ., concur.