THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MELVIN D. PARKER, Defendant-Appellant.

First District (1st Division)    No. 78-1528

Opinion filed December 1, 1980.

James J. Doherty, Public Defender, of Chicago (Sam Majerowicz, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joan S. Cherry, and Thomas J. Leanse, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This is an appeal from the circuit court of Cook County wherein the defendant, Melvin Parker, was convicted of involuntary manslaughter and aggravated battery by the court, sitting without a jury. Defendant was sentenced to three years and four months to 10 years on involuntary manslaughter and two to six years on aggravated battery, with the sentences to be served concurrently.

The issues presented for review are: (1) whether the State proved beyond a reasonable doubt that the defendant caused decedent's death; (2) whether the State proved beyond a reasonable doubt that the defendant's acts were performed recklessly; (3) whether the trial court abused its discretion in restricting defendant's cross-examination of witness, Ms. Swoope; (4) whether the State failed to disclose, before trial, evidence favorable to the defense, thereby denying the defendant a fair trial; (5) whether the trial court abused its discretion in finding witness William Swoope competent to testify; and (6) whether the defendant waived all issues except for the reasonable doubt issues by failing to include those remaining issues in his motion for a new trial.

At trial, Ms. Swoope and her 12-year-old son, William Swoope, testified regarding the circumstances of the death of Jesse Swoope, who was nine years of age, Ms. Swoope's son and William's brother.

On May 4, 1976, Ms. Swoope lived at 4445 South Evans, on the 12th floor, with her five children and the defendant. At about 10 p.m. that evening Ms. Swoope, her son Alexander, and the defendant were in the living room of the apartment watching television. Ms. Swoope's sons Jesse and William and her daughter, Diana, were in the boys' bedroom. The defendant had placed the boys on punishment for a week, and they were required to stay in bed.

Jesse, William and Diana were playing. Jesse hit Diana in the nose and Diana started hollering. Ms. Swoope heard Diana scream, and the defendant and Ms. Swoope jumped up and ran into the boys' bedroom. When Ms. Swoope and the defendant got to the bedroom, the light was on, Jesse was in his bed, William was in his bed and Diana was in the bed with Jesse. The children were in their underclothes. The defendant told Jesse that he should not have been playing because he was being punished. The defendant told them that they should not have been playing and declared that someone find him his belt or get him the belt. He

then left the room and returned with the belt. The defendant had made the belt at work, and the end was cut into four strips.

The defendant ordered William to stand at the foot of the bed, where the defendant whipped him with the belt. William was hit on the head, legs and back. At one point, Ms. Swoope grabbed the defendant's arm and tried to stop him from beating William, who was crying and moving around. The defendant continued hitting William while ordering him to stand up. William finally fell to the floor. The defendant told him to get up, but William would not get up. The defendant then put his foot on William's chest, and removed it only when Ms. Swoope told him to do so. The defendant then told William to get into bed. The beating of William lasted about 15 minutes, and William sustained injuries including a swollen eye and left side of the face, and a bloody nose.

After beating William the defendant ordered Jesse to stand at the foot of the bed. When Jesse complied the defendant hit Jesse with the back of his hand, knocking Jesse down. The defendant then told Jesse to get up while he hit Jesse, picked him up and threw him against the bed and wall. The defendant ordered Jesse to get up, but Jesse did not get up. The defendant ordered Jesse to get out of the bed and take his whipping. As Jesse moved to the end of the bed he was crying. As the defendant began hitting Jesse with the belt he was still crying and began moving around. Once when Jesse moved, the defendant threw a chair at him. The chair struck Jesse on the front of his body and knocked him over. Ms. Swoope then told the defendant to leave Jesse alone, whereupon the defendant and Ms. Swoope left the room. Ms. Swoope said that after the beating Jesse's face and eyes were swollen and he was bleeding at the mouth.

The defendant went to Ms. Swoope's bedroom and stood outside the door. Her bedroom was located about 10 or 12 feet from the bedroom of her two sons. As she was talking with the defendant, she heard the window open in the boys' bedroom. This was a few seconds after they had left the boys' bedroom. They both quickly ran back to the room and the defendant was in front of Ms. Swoope, as he had pushed her back to get past her. The defendant was standing at the window when Ms. Swoope arrived at the bedroom window. The defendant said, "My God, the boy has jumped out of the window. We got to go downstairs. No, we have to call the police first." Ms. Swoope went over to the window, looked out and saw Jesse lying on the ground, 12 floors below.

Ms. Swoope testified that the defendant had reprimanded the children on prior occasions by striking them with the belt.

William Swoope, age 12 at the time of trial, testified after the court first held a hearing and determined he was competent to testify. He corroborated Ms. Swoope's testimony with regard to the beatings admin-

istered by the defendant. In addition, he testified that his mother was in the bedroom during the entire incident, and that neither his mother nor the defendant were in the bedroom when Jesse jumped out of the window.

A Chicago police officer and investigator next testified for the State. He testified that he had two conversations with the defendant at the police station. During both of these conversations, the defendant stated that Jesse jumped out of the window because he was afraid of receiving another beating. Specifically, the defendant was asked, "Do you know why he jumped out of the window?" and the answer was, "The only thing I can say, he was afraid I was going to come back and spank him."

After closing arguments, the defendant was found guilty of involuntary manslaughter and aggravated battery. Defense counsel made an oral motion for a new trial. The State's Attorney objected and requested more specificity. Defense counsel argued his oral motion exclusively on the insufficiency of the evidence; no other errors were alleged at trial.

A hearing was held in aggravation and mitigation, and the defendant was sentenced to a term of not less than three years and four months and not more than 10 years for the involuntary manslaughter conviction and to a term of not less than two years and not more than six years for the aggravated battery conviction, with said sentences to run concurrently. The defendant now appeals said convictions.

The defendant claims the State failed to prove beyond a reasonable doubt that the acts of the defendant caused the decedent's death, because the decedent leaped 12 floors to his death sometime after defendant completed beating the decedent and had left the room. Put another way, defendant claims the beating itself was not sufficient to cause deceased to reasonably believe his life was in danger, and his "suicide" was an independent intervening force which broke the claim of causation stemming from defendant's conduct.

In order to analyze this question, this court must undertake the difficult task of placing itself in the mind of a nine-year-old boy under the circumstances of the instant case. The record reveals the defendant had beaten the decedent on prior occasions. At the time in question, the defendant beat the decedent with a strap, hit him with a chair and threw him against the wall until decedent's face and eyes were swollen and he was bleeding from the mouth. In addition, the decedent knew he was beaten for playing at a time that he was being punished. The defendant had put him on punishment for a week and he, with his sister and brother, were required to stay in their room in bed.

The defendant apparently knew the reason the decedent jumped out the window. The defendant had conversations with investigating officers wherein he stated that Jesse jumped because he was afraid of receiving

another beating. Such a fact is apparent from the record, of course, regardless of defendant's statements. However, a question remains as to whether the decedent's jump was under circumstances which would have caused a prudent child of 9 years of age to do so. See *Adams v. People* (1884), 109 Ill. 444, 449.

■■ In looking at the circumstances facing Jesse Swoope, one must consider that the standard of care which a minor of limited judgment and experience is called upon to exercise in a given situation is not the same quantum of care required of an adult under the same circumstances. (See 43 C. J. S. *Infants*, §193 (1978); *Hall v. Randell* (1975), 26 Ill. App. 3d 505, 325 N.E.2d 710.) The severity of the beating, and decedent's reasonable fear that he was about to suffer death or great bodily harm at the hands of the defendant, justify in the nine-year-old's mind the jump from the window. The decedent was a severely battered nine-year-old child, who reasonably expected future severe beatings. Under these circumstances, we find the decedent exercising that degree of care which a normal nine-year-old child would use under circumstances similar to those shown by the evidence and who reasonably believed he was in danger of death or great bodily harm. His demise was a tragically futile attempt to escape from this complete domination and physical oppression. The result was unquestionably caused by defendant's acts.

Involuntary manslaughter is defined by statute as:

> "(a) A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly, * * *." Ill. Rev. Stat. 1977, ch. 38, par. 9—3(a).

■■ The evidence at trial was sufficient to prove the defendant acted recklessly. Recklessness is defined by statute as a conscious disregard of a substantial risk. (Ill. Rev. Stat. 1977, ch. 38, par. 4—6.) Defendant is shown to have administered severe beatings to nine-year-old Jesse Swoope including throwing him against the wall and throwing a chair at him. This clearly amounts to reckless conduct under the statute. The evidence at trial also shows defendant's acts were likely to cause death or great bodily harm and that such acts did cause the death of nine-year-old Jesse Swoope. The requisite element of the offense of involuntary manslaughter was proved beyond a reasonable doubt.

The defendant also claims the trial court abused its discretion in restricting cross-examination of witness, Ms. Swoope.

The State's answer is the defendant waived his objection to the alleged error by failing to raise the issue in his motion for a new trial. In addition, the State argues the trial court properly exercised its discretion

by limiting the cross-examination. The question of waiver is also raised by the State in answer to the defendant's claim that the State failed to disclose to the defendant, before trial, evidence favorable to the defense.
■■ Although the general rule is that a failure to raise issues in a motion for a new trial constitutes waiver of those issues (*People v. Foster* (1979), 76 Ill. 2d 365, 380, 392 N.E.2d 6), the rule has been suspended where the issue had been raised during the trial and where the accused would have been prejudiced should his allegations be proved. (*People v. Nunez* (1974), 24 Ill. App. 3d 163, 320 N.E.2d 462.) Moreover, Supreme Court Rule 615 provides that plain errors affecting substantial rights may be noticed by the reviewing court even though they were not brought to the attention of the trial court. (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a).) Inasmuch as this is a homicide case and since the trial court was apprised of the allegations that the State failed to comply with discovery rules, the waiver rule will be suspended. See *Nunez*; *People v. Dees* (1977), 46 Ill. App. 3d 1010, 361 N.E.2d 1126.

With regard to the issue of the propriety of the trial court's restriction on defense counsel's cross-examination of Ms. Swoope, the State argues the trial court properly exercised its discretion since such cross-examination: (1) concerned information that was unavailable to the witness; and (2) would unduly prejudice the witness' credibility.

Ms. Swoope was the victim's mother and an eyewitness to the occurrence. At the September 1977 trial of the defendant, Ms. Swoope testified as to what happened and was cross-examined by defendant's counsel. Ms. Swoope testified she was arrested in this case, and charged with child neglect. She was arrested on May 5, 1976, one day after the occurrence. She had a court date in Branch 41 on May 18, 1976, but the case had been "dropped." She thought the case was dropped prior to her testifying before the grand jury at the preliminary hearing, yet she did not know who "dropped" it. Also, her four other children were not living with her at the time of trial. The Department of Children and Family Services took them on May 4, 1976, after a hearing on this matter.

Defense counsel was prevented from receiving information as to the following questions: whether the charge against Ms. Swoope was dropped at the request of the State's Attorney; whether Ms. Swoope knew whether she was discharged or found not guilty; whether the Department of Children and Family Services found her to be a neglectful mother; and whether her children were taken from her due to the May 4, 1976, incident.
■ The record reveals Ms. Swoope testified she did not know who dropped the charge against her. This implies that she made no deal with the Assistant State's Attorney. In addition, the trial court properly observed that whether the witness was discharged or found not guilty

does not tend to prove prejudice or motive. Moreover, the court observed generally that the line of cross-examination in question did not tend to prove prejudice or motive, and we agree. The scope of cross-examination is generally a matter within the sound discretion of the trial court (*People v. Handley* (1972), 51 Ill. 2d 229, 236, 282 N.E.2d 131, *cert. denied* (1972), 409 U.S. 914, 34 L. Ed. 2d 175, 93 S. Ct. 247), and we will not reverse a trial court's judgment unless that discretion has been shown to be abused, and the questioning party has been prejudiced thereby. A review of the record reveals overwhelmingly undisputed evidence in this case. In view of this, the trial court properly exercised its discretion in limiting the cross-examination of Ms. Swoope.

The defendant further claims he was denied a fair trial because the State failed to disclose, before trial, evidence favorable to the defendant in violation of the rule in *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194. This is so even though the evidence came out at trial because the defendant would have been better able to prepare his defense had he had this information prior to trial. In *Brady v. Maryland*, the United States Supreme Court held that an accused is denied a fair trial when the prosecution withholds exculpatory evidence from the accused until after trial. However, in *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392, the Supreme Court held that the prosecutor's failure to disclose exculpatory evidence must be material and result in the denial of a fair trial. The court defined materiality as omitted evidence which creates a reasonable doubt of guilt that did not otherwise exist. The *Agurs* court further held that the mere possibility that evidence "might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Agurs*, 427 U.S. 97, 110, 49 L. Ed. 2d 342, 353, 96 S. Ct. 2392, 2400-01.

In the case at bar, prior to trial, defendant filed a motion for discovery requesting whether any criminal or civil action was then pending against any witness during the pendency of the prosecution of the defendant. Although a charge of child neglect had been pending against Ms. Swoope, a witness for the State, the State failed to provide that information to defendant, prior to trial. Instead, defense counsel obtained the information by cross-examination of Ms. Swoope at trial, and presented such evidence to the trial court in such a manner.

In addition, defendant's motion for discovery requested any photos the prosecution intended to use at trial, and requested the prosecution to disclose any physical evidence that might be favorable to the defense. In this regard defense counsel demanded, during trial, that the prosecution disclose certain photos of William Swoope allegedly showing he did not have a bruised eye, which were seen by defense counsel on the prosecution's counsel's table. After an *in camera* inspection the court allowed

defense counsel to examine the photos in question. Later, defense counsel introduced some of these photos into evidence.

■■ Because the evidence in question was heard by the court, its alleged withholding by the prosecution does not literally fall within *Brady v. Maryland,* as restated in *Agurs.* However, defendant claims the delay in his learning of the evidence in question so hampered the preparation of his defense as to have denied him a fair trial. We disagree. The testimony of Ms. Swoope was corroborated by the testimony of William Swoope, and stood uncontested by the defense. The information requested regarding Ms. Swoope could only have minimally affected her credibility. Similarly, the photos of William Swoope could have had only a minimal effect on his credibility, and would have only a minimal effect on the prosecution of the defendant's case. The extent of the swelling of William's eye is simply not critical to defendant's case. And, as previously discussed, defendant did have an opportunity to present this evidence to the court for consideration. In addition, the record reveals a failure by the defendant to request a continuance when confronted with the delayed disclosure of the favorable evidence in question. This indicates further that the evidence allegedly withheld from defendant was not significant and that the defendant was able to adequately prepare his defense. (See *People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6.) If the evidence in question was so significant as to require a complete change in defendant's case, counsel should have asked for a continuance or a recess for that purpose. In considering the entire record in this case, his failure to do so indicates to this court that any alleged prejudice was not so material as to deny defendant a fair trial.

Defendant further claims the trial court abused its discretion in finding 12-year-old William Swoope competent to testify.

■■ The witness was 12 years of age at the time of trial and as such is not presumed to be competent to testify. (*People v. Hall* (1971), 1 Ill. App. 3d 949, 275 N.E.2d 196.) However, the trial court did conduct a hearing concerning the competency of the child witness and found he was competent to testify. The trial court's ruling concerning the competency of a child witness to testify should not be disturbed on review, unless such a ruling involves a manifest abuse of discretion. (*People v. Pearson* (1970), 126 Ill. App. 2d 166, 261 N.E.2d 519.) Defendant contends the trial court abused its discretion in not adhering to the four-point test in *People v. Sims* (1969), 113 Ill. App. 2d 58, 61, 251 N.E.2d 795, 797, which provides as follows:

> "If testimony is to be permitted, the court's inquiry must, with reason, satisfy the judge that the witness is sufficiently mature (1) to receive correct impressions by his senses, (2) to recollect these

impressions, (3) to understand questions and narrate answers intelligently, and (4) to appreciate the moral duty to tell the truth (and comprehend the meaning of the oath)." (See *People v. Keeser* (1977), 47 Ill. App. 3d 637, 641.)

The record reveals the trial court established that the witness was attending Lake O'Toole School at 65th and Seeley, which was six blocks from his home. He was in the seventh grade and his teacher was Mr. Mosley. He knew his street address and he knew the months and the year at the time. He understood what it meant to tell the truth and if you did not tell the truth you would be punished. A review of the record of the competency hearing reveals that although the witness' answers to some of the questions did reflect some confusion, the trial court did not manifestly abuse its discretion in finding the witness competent to testify.

For the above and foregoing reasons the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

McGLOON and O'CONNOR, JJ., concur.