THOMAS MARK STONE, Plaintiff-Appellant, v. CLIFFORD CHRYSLER-PLYMOUTH, INC., *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—01—1047

Opinion filed August 2, 2002.

Colleen Wengler, of Krohn & Moss, Ltd., of Chicago, for appellant.

Heather D. Erickson, of Sanchez & Daniels, of Chicago, for appellee Clifford Chrysler-Plymouth, Inc.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff Thomas Mark Stone filed a four-count complaint against Clifford Chrysler-Plymouth, Inc. (Clifford), and Chrysler Financial Corporation. Counts I and III are directed against Clifford and allege violations of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1992)) and

common law fraud, respectively. The trial court granted Clifford's motion for summary judgment as to counts I and III. Plaintiff appeals asserting the existence of genuine issues of material fact. The issue before us is whether there are genuine issues of material fact as to whether the "cost to repair" the presale damage to plaintiff's vehicle exceeded 6% of the manufacturer's suggested retail price (MSRP) of the vehicle and, if so, whether Clifford had "actual knowledge" of the damage thereby requiring Clifford to disclose the damage to plaintiff pursuant to the Motor Vehicle Franchise Act (Franchise Act) (815 ILCS 710/5 (West 1998)). For the reasons that follow, we reverse and remand.

## I. STATEMENT OF FACTS

On September 26, 1998, plaintiff entered into a motor vehicle lease agreement with Clifford to lease a 1998 Jeep Grand Cherokee. The agreed-upon value of the vehicle stated on the lease agreement is $37,590.89. On October 24, 1998, the desired vehicle was acquired by Clifford from Crossroads Lincoln Mercury Chrysler Plymouth, Inc. (Crossroads), and on October 26, 1998, the vehicle was delivered to plaintiff.

According to plaintiff's deposition testimony, on the day he drove the car home from Clifford, he noticed a rattling in the door. When he opened the door he noticed two small pieces of glass on the frame. Plaintiff informed Jack Metz, a Clifford employee, about the glass. According to plaintiff, Metz told him that he did not know how the glass got there. Plaintiff further testified that at a later date, the entire inside door panel fell off and the passenger door began leaking. Sometime thereafter, the car was scratched by a valet service and plaintiff took the car to be repainted. According to plaintiff, the repair facility informed him that the car had previously been repainted.

On December 17, 1999, plaintiff filed his four-count complaint. Counts I and III of the complaint are directed against Clifford and allege statutory and common law fraud. According to the complaint, Clifford's employee, Jack Metz, who sold the vehicle to plaintiff, misrepresented to plaintiff that the vehicle was new and failed to inform plaintiff that it was in a "severe accident" prior to its sale to plaintiff. Plaintiff further alleges that he relied on Clifford's representations, which Clifford knew were false, and suffered damages as a result.

On January 17, 2001, Clifford filed its motion for summary judgment as to counts I and III of plaintiff's complaint. The motion asserted that there is no evidence that the vehicle was ever in an accident or that Clifford had actual knowledge of any damage to the

vehicle prior to its delivery to plaintiff and, therefore, plaintiff cannot establish a material misrepresentation of fact. In support of its motion, Clifford attached the affidavit of Jack Metz, which stated that upon being informed by plaintiff that plaintiff had heard broken glass rattling in the vehicle, Metz telephoned Crossroads to find out the cause. On January 7, 2000, Crossroads provided Clifford with its statement to its insurance company and the repair order regarding the vehicle. The insurance statement, which is attached to Clifford's motion, reflects a broken window, a stolen radio, and damage to the dash. In his affidavit, Metz stated that, although he eventually learned of the damage and repairs to the vehicle, which occurred while in the possession of Crossroads, neither he nor anyone at Clifford had knowledge of this prior to the sale to plaintiff.

In addition, Clifford's motion further asserted that, pursuant to the Franchise Act (815 ILCS 710/5 (West 1998)), even if Clifford had knowledge of the damage, it had no duty to disclose it because the cost to repair the damage (which, under the Franchise Act, does not include the cost of repairs involving glass or in-dash audio equipment) did not exceed 6% of the retail price of the vehicle. The invoice amount listed on the Crossroads repair order shows a total cost to repair of $2,557.62, which includes the cost to repair the glass and audio equipment.

In his response to Clifford's motion, plaintiff first asserted that he was not making a claim under the Franchise Act and that whether the extent of the damage was in excess of 6% of the sales price was irrelevant. Plaintiff argued that Clifford committed common law and statutory fraud based on its misrepresentation to plaintiff that the vehicle was new. Plaintiff further asserted that even if the court found that the Franchise Act applied, there were genuine issues of material fact as to whether the extent of the damage to the vehicle exceeded 6% of the price. Plaintiff contended that if the vehicle had been properly repaired, the repairs would have cost in excess of 6% of the vehicle's price.

Plaintiff attached the affidavit of his expert, William J. Anderton, to his response. After inspecting the vehicle, Anderton made the following conclusions:

"The subject vehicle has sustained damage that required repair/repaint activity to the hood panel, left front door, left rear door and the front of the left quarter panel (these repairs have not been properly completed). In addition, the repairs likely included the replacement of the left front door glass and the radio. There may also have been damage and repair to the instrument panel.

The selling dealer certainly would have possessed knowledge of this damage and the corrective repairs. However, the repaint mask-

ing lines and the paint color and texture differences should have been obvious to any professional working in the automobile sales or repair business.

When considering 'proper' repair/repaint activity as well as the replacement of the door glass and the radio, the value of the repairs to the subject vehicle would have been in excess of twenty-three hundred dollars ($2300.00) in September of 1998.

Additionally, the value of the subject vehicle would have been impaired by approximately twenty-five hundred dollars ($2500.00) in September of 1998, when compared to an identical 'new' vehicle that had never experienced any repair and repaint activity. The reduction in value would be similar to that of a dealer demonstrator car discount."

Relying on his expert's report and testimony, plaintiff argued that questions of material fact exist regarding Clifford's "actions in misrepresenting the quality and characteristics of the [vehicle], and as to whether the damage to the vehicle was in excess of 6% of the manufacturer's retail price."

On March 9, 2001, the trial court found that plaintiff failed to present competent evidence that Clifford had actual knowledge of the presale damage and that the cost to repair the presale damage amounted to greater than 6% of the retail sales price and granted summary judgment in favor of Clifford.

## II. DISCUSSION

### A. Standard of Review

■ Our review of a trial court's grant of summary judgment is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992); *Dunlap v. Alcuin Montessori School*, 298 Ill. App. 3d 329, 338 (1998). A motion for summary judgment should be granted when " 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986), quoting Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c). Summary judgment is a drastic means of disposing of litigation and should be granted only in circumstances where the right of the moving party is clear and free from doubt. *Harris v. Old Kent Bank*, 315 Ill. App. 3d 894, 899 (2000).

### B. Motor Vehicle Franchise Act

■ Section 5 of the Franchise Act provides in pertinent part:

"A motor vehicle dealer shall disclose to the purchaser before delivery of the new motor vehicle, in writing, any damage that the dealer has actual knowledge was sustained or incurred by the mo-

tor vehicle at any time after the manufacturing process was complete but before delivery of the vehicle to the purchaser. This disclosure is not required when the cost to repair does not exceed 6% of the manufacturer's suggested retail price of the vehicle based upon the dealer's actual retail repair cost, including labor, parts, and materials if the damage is repaired or the retail estimate to repair the vehicle if it is not repaired.

Damage to glass, tires, bumpers, and in-dash audio equipment is not to be considered in determining the cost of repair if replaced with the manufacturer's original equipment.

If disclosure is not required under this Section, a purchaser may not revoke or rescind a sales contract due to the fact the new vehicle was damaged and repaired before completion of the sale. In that circumstance, nondisclosure does not constitute a misrepresentation or omission of fact." 815 ILCS 710/5 (West 1998).

### 1. Cost to Repair

Plaintiff asserts that summary judgment was improper because he presented evidence that if the vehicle were repaired properly, the cost to repair would have exceeded 6% of the price of the car. The Franchise Act provides that the "cost to repair" is based upon either (1) "the dealer's actual retail repair cost, including labor, parts, and materials if the damage is repaired" or (2) "the retail estimate to repair the vehicle if it is not repaired." 815 ILCS 710/5 (West 1998).

■ We find that there is a genuine issue of material fact as to the total cost to repair the vehicle. Plaintiff relies on the affidavit of his expert, who states that the cost to repair the vehicle is in excess of $2,300. Plaintiff's expert stated at his deposition that the repairs included in his estimate were "the time and materials necessary to repair the vehicle for broken glass, replace the radio, and paint two doors, a quarter and a hood, portion of the hood, portion of the quarter." Plaintiff also points out that the expert's estimate did not include certain repairs that were not done and that would raise the estimate. The expert's affidavit raised an issue as to whether the repairs were done properly. It is unclear whether the car has been repaired properly. Because the evidence presented to the court on the "cost to repair" raises a question of fact, summary judgment on this issue is inappropriate.

Moreover, there is absolutely no evidence in the record on the manufacturer's suggested retail price of the vehicle in question. Clifford states in its memorandum, which accompanied its motion for summary judgment, that the "value of the vehicle at the time of sale was $37,590.39." Nowhere in the record is it indicated that $37,590.39 was the manufacturer's suggested retail price. Because the Franchise

Act specifically refers to the MSRP and because there remains an issue of fact as to the MSRP of the vehicle at issue, this also precludes summary judgment.

Accordingly, because there exist genuine issues of fact as to whether the cost to repair the vehicle amounts to greater than 6% of the MSRP, the trial court erred in granting summary judgment in Clifford's favor.

## 2. Clifford's Actual Knowledge

Plaintiff also argues that a genuine issue of fact exists as to whether Clifford had actual knowledge of the damage.

■ According to the affidavit of Jack Metz, no one at Clifford knew that the vehicle's window had been broken or that its radio had been stolen while the vehicle was in possession of Crossroads prior to delivery to Clifford. However, plaintiff argues that according to its expert anybody with automotive experience "would have been able to see [the repaint masking lines and paint color and texture differences] in the vehicle during any routine or even in-depth type of inspection that they would have or should have done to a vehicle prior to delivery."

Plaintiff's expert's affidavit is sufficient to at least raise a genuine issue of fact as to Clifford's "actual knowledge" of the damage and precludes summary judgment.

## III. CONCLUSION

Based on the foregoing, we hereby reverse summary judgment in favor of Clifford and remand for further proceedings.

Reversed and remanded.

GALLAGHER, P.J., and O'BRIEN, J., concur.