NICHOLAS TEDESCHI *et al.*, Plaintiffs-Appellants, v. BURLINGTON NORTHERN RAILROAD COMPANY, Defendant-Appellee.

First District (5th Division)   No. 1—95—0595

Opinion filed June 28, 1996.

Robert J. Cooney, Jr., and Michael J. Lubeck, both of Cooney & Conway, of Chicago, for appellants.

John Newell, Michael L. Sazdanoff, and Kenneth J. Wysoglad, all of Kenneth J. Wysoglad & Associates, of Chicago, for appellee.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

A jury awarded Nicholas Tedeschi $100,000 in damages from Burlington Northern Railroad for aggravation of a preexisting condition due to a collision between Tedeschi's truck and defendant's train. The jurors also awarded Kathleen Tedeschi $10,000 for loss of society, but they awarded Nicholas nothing for medical expenses, pain and suffering, and disability. Plaintiffs appeal from judgment entered on the verdict. We find that the verdict is not irreconcilably inconsistent, and it does not show that the jury overlooked proven elements of damages. Therefore, we affirm.

Around noon on June 22, 1987, Nicholas drove a tractor-trailer across railroad tracks. A train shoving cars at three or four miles per

hour ran into the trailer. The trailer pivoted from the tractor, and the train pushed the back end of the trailer about 15 feet. The collision rocked the tractor, but the tractor did not move from its lane. Nicholas, in the tractor, fell against the door and the steering wheel, twisting his back when the tractor rocked. He got out of the tractor and the train's conductor walked up to him. Nicholas told the conductor he was not hurt.

Nonetheless, Nicholas went to a hospital, where doctors X-rayed his back. He stayed in the hospital for a week. He continued to receive back therapy for several months before his doctors told him he could return to work. In October 1987 Nicholas tried to work, but after two days he found the pain unbearable. He went to Dr. Robert Rosenzweig, who hospitalized Nicholas for another 10 days. After further back therapy, Nicholas again returned to work in December 1987. Dr. Rosenzweig found that Nicholas then had a good range of motion, normal neurological test results and a normal ability to raise his legs.

Nicholas worked regularly until February 1988, when he returned to Dr. Rosenzweig. Nicholas told Dr. Rosenzweig that he had slipped off a step at work. His straight leg raise test and other tests showed his range of motion diminished considerably. Neurological tests showed diminished sensation in the legs. Rosenzweig then took X rays, myelograms and CAT scans. He found evidence that Nicholas suffered from degenerative arthritis. Rosenzweig readmitted Nicholas for two weeks in the hospital in April 1988, and for another week in May, to perform further tests to determine why his condition did not improve.

Nicholas continued to receive medical treatment from various physicians. In 1989 he began psychiatric treatment for depression. In 1991 he had back surgery to alleviate the pain. The lawsuit against defendant went to trial in 1994.

Dr. Leonard Berlin, a radiologist, testified that the X ray of Nicholas' back from June 1987 showed degenerative arthritis, which must have preceded the accident by at least several months. He saw no indication on that or subsequent X rays that any traumatic incident, like the accident, accelerated the spinal degeneration.

Dr. Kenneth Heiferman, who performed the back surgery in 1991, testified that the operation relieved pressure on Nicholas' nerves. The pressure could have been the result of degenerative processes. The extent to which the accident contributed to the progression of ongoing degenerative processes was probably proportional to the degree of trauma suffered in the accident. Heiferman clarified: "[I]t's hard to say how much *** the accident contributed to *** the physical degenerative findings *** [or] the structural changes."

Dr. Rosenzweig admitted that he did not do extensive studies when Nicholas first came to him in October 1987 because his condition did not then warrant further studies. He ordered the myelogram and CAT scan in 1988, after Nicholas reported slipping at work, because his condition, reflected in range of motion and neurological tests, then warranted further investigation. Dr. Rosenzweig had no opinion "as to how much of Mr. Tedeschi's condition *** [in] 1988 is due to the automobile accident of June of 1987, how much of it is due to the preexisting arthritis, and how much of it is due to this incident where he slipped off a step."

Dr. Daniel Hardy, a psychiatrist, reviewed records from Nicholas' psychiatrist and concluded that most of the psychiatric treatment addressed a personality disorder that distantly predated the accident.

Plaintiffs requested a verdict form itemizing Nicholas' damages as:

> "Medical_____
> Lost Earnings_____
> Pain & Suffering_____
> Disability &
> Disfigurement_____
> Aggravation of
> Pre-Existing Condition_____
> Future Earnings_____
> Future Pain & Suffering_____."

Defendant objected to the inclusion of aggravation of preexisting conditions as a separate element. The court overruled the objection.

The jury found the accident caused Nicholas damages, which it itemized as $120,000 for aggravation of preexisting conditions and nothing for all other categories of damages. The jury also found that Kathleen suffered damages of $12,000 for loss of society due to the accident. Because the jurors found Nicholas liable for one-sixth of the negligence that caused the accident, they reduced the award to him to $100,000 and to Kathleen to $10,000.

Plaintiffs moved for a new trial on damages because the verdict was irreconcilably inconsistent and because the jury ignored proven elements of damages. The trial court denied the motion and plaintiffs appeal.

■ This court will not reverse a trial court's ruling on a motion for new trial unless the trial court abused its discretion. *Kumorek v. Moyers*, 203 Ill. App. 3d 908, 912, 561 N.E.2d 212 (1990). However, "where verdicts returned in the same action are legally inconsistent, such verdicts must be set aside and a new trial granted." *Kumorek*, 203 Ill. App. 3d at 913. The court exercises all reasonable presump-

tions in favor of the verdict, and the verdict is not legally inconsistent unless it is absolutely irreconcilable. See *Wottowa Insurance Agency, Inc. v. Bock*, 104 Ill. 2d 311, 472 N.E.2d 411 (1984); *Bilderback v. Admiral Co.*, 227 Ill. App. 3d 268, 270, 591 N.E.2d 36 (1992). The verdict cannot be considered irreconcilably inconsistent if any reasonable hypothesis supports the verdict. *Powell v. State Farm Fire & Casualty Co.*, 243 Ill. App. 3d 577, 581, 612 N.E.2d 85 (1993).

■ We find that a reasonable hypothesis supports the verdict here. The trial court presented a verdict form with separate lines for the listed categories of damages, but without instructions distinguishing the category of aggravation of a preexisting condition from other categories. Thus, the jury needed to decide what damages could fall into the category of aggravation without falling into the other listed categories. Reasonable jurors may have realized that aggravation of preexisting conditions caused increased pain and suffering, increased the amount of wages Nicholas lost from what he would have lost due to degenerative arthritis alone, increased his medical bills and worsened his disability. In awarding damages for aggravation of the preexisting condition, they would need to assess all of these types of loss.

However, there was no further, separate loss for them to assess as damages due to aggravation which did not fall into one of the other listed categories. To paraphrase the reasoning of the court in *Powers v. Illinois Central Gulf R.R. Co.*, 91 Ill. 2d 375, 382, 438 N.E.2d 152 (1982):

> "[A] jury cannot determine damages for the [aggravation of a preexisting condition] in isolation and apart from the remaining elements of damage. *** It is incomprehensible that the jury could place a monetary value on the [aggravation of a preexisting condition] without relating such an award to the remaining items of compensable loss, disability and disfigurement, pain and suffering, and loss of earnings."

Therefore, reasonable jurors confronting the puzzling verdict form may have decided that all damages related to aggravation of preexisting conditions must be classified as "aggravation of preexisting condition," no matter which other category they might also fit. The jury then should make a separate award on the line for pain and suffering only if the plaintiffs proved Nicholas suffered pain unrelated to his preexisting degenerative arthritis. Thus, reasonable jurors following the instructions and the verdict form could have returned this verdict based on a finding that all damages Nicholas suffered were related to his preexisting condition. The verdict is not inconsistent with itself, and in view of the lack of definition of what

the award for aggravation should cover, the verdict comports with the trial court's instructions.

Our holding finds support in the reasoning of *Smith v. City of Evanston*, 260 Ill. App. 3d 925, 935, 631 N.E.2d 1269 (1994), where the court held:

> "[W]e find no measure for the value of aggravation of a preexisting condition that is separate from the other elements of damages. A jury appraising the monetary value of aggravation of the condition needs to look to the increase in medical costs, the earnings lost which would not have been lost by reason of the preexisting condition alone, the increase in pain and suffering, and the worsening of disabilities and disfigurement. *** Any change in the plaintiff's ailment or condition, being an injury in itself, is measured by its consequences to the plaintiff in the form of the appropriate elements of damage."

If the jury awarded Nicholas some part of the $120,000 to compensate him for the increase in his pain and suffering due to aggravation of his preexisting condition, any separate award for pain and suffering would provide him duplicate compensation, unless the pain and suffering separately awarded were unrelated to the preexisting condition. See *Powers*, 91 Ill. 2d at 382-83. The jury's award here may show recognition of the possibility of duplicate recovery and a proper decision to avoid such duplication.

Plaintiffs cite *Urban v. Zeigler*, 261 Ill. App. 3d 1099, 1104-05, 634 N.E.2d 1237 (1994), in support of the argument that the verdict is irreconcilably inconsistent. The court therein stated, in *dicta*:

> "In our view, a damage award for medical expenses and aggravation of a preexisting condition without an award for pain and suffering is irreconcilably inconsistent. If there was sufficient evidence to support an award of damages for *aggravation* of a preexisting condition, it logically follows that there was sufficient evidence of the plaintiff's increased pain and suffering due to the aggravated injury. *** By definition, if a preexisting condition is aggravated, it has worsened and is accompanied by increased pain and/or suffering. Thus, an award for medical expenses and aggravation of a preexisting condition without an award for pain and suffering is irreconcilably inconsistent." (Emphasis in original.)

We disagree. The court in *Urban* does not explain what the award for aggravation of the condition is to cover apart from the increased pain, the increased medical expenses, the increase in wage loss and the increase in disability. If the jury already awarded plaintiff appropriate sums for those losses under the heading of aggravation of preexisting conditions, any further award would duplicate the award

already made, giving rise to overcompensation. Neither the court in *Urban,* nor plaintiffs, nor the trial court here, has offered any explanation of what the award for aggravation of a preexisting condition covers apart from the other listed categories of compensation.

Our decision is consistent with *Rice v. Merchants National Bank,* 213 Ill. App. 3d 790, 802, 572 N.E.2d 439 (1991). In that case the jury awarded the plaintiff $48,000 for medical expenses, but nothing for the pain and suffering that led the plaintiff to seek the medical help. The appellate court rejected the defendant's suggestion that the court could construe the award of medical expenses to include an award for pain. The court held that it could not assume that the jury awarded as expenses amounts that were not to compensate for expenses, but that were instead intended solely for the distinct category of pain. To follow that defendant's suggestion, the court would have had to have found that the jurors failed to follow instructions by awarding, under medical expense, compensation that the court instructed them to award under the category of pain and suffering.

Here, by contrast, the category of aggravation of a preexisting condition is not distinguishable from the other categories of damages. The court did not instruct the jury to make an award for increased pain and suffering due to aggravation of the preexisting condition only under the heading of pain and suffering, and not under the equally applicable heading of aggravation of a preexisting condition. The verdict here is not irreconcilably inconsistent with itself or the trial court instructions.

■ Plaintiffs' second claim, that the jury ignored proven elements of damages, is also unavailing. The jury verdict comports with the reasonable hypothesis that jurors found all damages related to preexisting conditions. The verdict does not show that the jury ignored proof of pain or medical expenses; the jurors may have found only that the pain and expenses formed part of the loss that they compensated under the heading of aggravation of a preexisting condition. The medical testimony amply supported the implicit finding that all of Nicholas' damages related to the preexisting condition.

The verdict is not irreconcilably inconsistent, and the verdict does not show that the jury ignored proven damages. Plaintiffs raise no other grounds for new trial. In particular, they raise no issue based on their own confusing instructions and verdict form, which requested an award for aggravation of a preexisting condition separate from all other categories of compensation without indicating to the jury what compensation for aggravation of the condition covered apart from the other categories of compensation. The trial court did

not abuse its discretion by denying the motion for a new trial. The judgment of the trial court is affirmed.

Affirmed.

COUSINS and HOURIHANE, JJ., concur.