JOHN HART, Plaintiff-Appellant, v. BOEHMER CHEVROLET SALES, INC., Defendant-Appellee.

Second District    No. 2—01—1482

Opinion filed April 3, 2003.

Larry P. Smith, Jim Gordon, and Julia L. Thomas, all of Krohn & Moss, Ltd., of Chicago, for appellant.

Jerald M. Mangan and Andrea M. Crumm, both of Mangan, Langhenry, Gillen & Lundquist, of Chicago, for appellee.

JUSTICE CALLUM delivered the opinion of the court:

Plaintiff, John Hart, sued defendant, Boehmer Chevrolet Sales, Inc., asserting claims under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2000)) and common-law fraud in connection with his purchase of a vehicle from defendant. Plaintiff appeals from the trial court's grant of defendant's motion for summary judgment, arguing that there exist genuine issues of material fact with respect to both counts of his complaint. We reverse and remand.

## I. BACKGROUND

On July 26, 1996, plaintiff purchased a 1996 Chevrolet Tahoe

from defendant. Defendant had acquired the vehicle on July 5, 1996, in a dealer trade from Muller's Chevrolet-Geo (Muller's). Muller's had acquired the vehicle from General Motors Corporation on June 13, 1996. On plaintiff's purchase date, the truck's odometer read 94 miles. Plaintiff's invoice and receipt noted that the vehicle was "new." The invoice listed Bill Henders as the salesperson on the transaction.

Plaintiff first noticed problems with the paint work on the driver's side of the car in August 1998. On November 19, 1999, plaintiff filed a two-count complaint against defendant, alleging violations of the Consumer Fraud Act and common-law fraud. In his Consumer Fraud Act count, plaintiff alleged that defendant's employee, Thomas P. Gallivan, represented defendant in the sale to plaintiff and that Gallivan misrepresented to plaintiff that the vehicle was a "beautiful new truck" that defendant had received from another dealer. Defendant concealed from plaintiff, with the intent that plaintiff rely on the omission, that the Tahoe had been in a severe accident prior to its sale to plaintiff. Plaintiff further alleged that defendant was aware that the representations made to plaintiff were false, and it should have been aware of the true history of the vehicle. Because of defendant's misrepresentation, plaintiff suffered damages.

In his common-law fraud count, plaintiff alleged that defendant intentionally or recklessly misled plaintiff when its agent stated that plaintiff's truck was a "beautiful new truck"; defendant intended that plaintiff rely on its representations in order to induce plaintiff to purchase the vehicle; and plaintiff reasonably relied on defendant's representations.

On October 3, 2001, defendant moved for summary judgment (735 ILCS 5/2—1005 (West 2000)), arguing that plaintiff presented no evidence that defendant knew that the Tahoe was involved in an accident or had sustained any damage prior to delivery to plaintiff. Plaintiff could not establish a violation of the Consumer Fraud Act where Gallivan's statement, if it was actually made, was not a material misrepresentation but rather his subjective and accurate description of the Tahoe. Moreover, defendant asserted that plaintiff could not prove the requisite intent because Gallivan was defendant's service manager and was not involved in the sale to plaintiff and thus could not have intended for plaintiff to rely on his statement. Defendant also relied on the Motor Vehicle Franchise Act (Franchise Act) (815 ILCS 710/1 *et seq.* (West 2000)). Section 5 of the Franchise Act requires dealers to disclose any damages to a vehicle prior to delivery to a purchaser if the dealer has actual knowledge of such damage. 815 ILCS 710/5 (West 2000). Defendant argued that plaintiff did not establish a material misrepresentation because there was no evidence

that the Tahoe was in an accident or that defendant had actual knowledge of any damage to the vehicle prior to delivery to plaintiff.

As to the common-law fraud count, defendant argued that Gallivan's statement was mere opinion, as opposed to a statement of material fact, and that plaintiff could not establish that Gallivan's statement was untrue, that he relied on it, or that the statement was intended to induce plaintiff to purchase the car.

In support of its motion, defendant submitted the affidavits of Steven Boehmer, owner and general manager of defendant. Boehmer stated that Gallivan was not involved in the sale of the Tahoe to plaintiff. Rather, at the time of plaintiff's purchase, Gallivan was the manager of defendant's service department. Boehmer also stated that no agent of defendant caused the flaws in the clear-coat finish on the vehicle.

Defendant also submitted Gallivan's affidavit, wherein Gallivan stated that he was not involved in vehicle sales and did not recall making the statement to plaintiff. If he did, though, it would not have been based on any substantive information about the vehicle, but would have been his personal opinion based upon a brief view of the vehicle's exterior.

Defendant attached transcripts of plaintiff's deposition testimony, wherein plaintiff testified that he inspected the Tahoe prior to purchase and noticed no problems with the paint work. Moreover, plaintiff stated that he had no actual knowledge that any of defendant's employees knew that his vehicle was in an accident or that any of defendant's employees caused the paint damage to his vehicle.

In his response to defendant's motion, plaintiff asserted that material issues of fact precluded the grant of defendant's motion with respect to both counts. Plaintiff argued that Gallivan's statement was a material misrepresentation made to induce plaintiff to purchase the Tahoe. Plaintiff also argued that, although defendant had a duty to disclose accident damage under the Franchise Act, it failed to do so in order to induce plaintiff to purchase the vehicle. Plaintiff purchased the car relying on defendant's misrepresentations.

Plaintiff pointed to the Franchise Act, which requires disclosure of damages where the cost to repair the vehicle exceeds 6% of the suggested retail price. 815 ILCS 710/5 (West 2000). Plaintiff's expert Kenneth Klein inspected the Tahoe on June 12, 2000. Klein's inspection report reflects an estimate of $2,099.84 to make paint and body repairs to the Tahoe, including parts, labor, supplies, and taxes. Plaintiff argued that the cost to appropriately repair the Tahoe exceeded 6%. Thus, when defendant failed to inform plaintiff of the damage, it engaged in a deceptive act.

Plaintiff further argued that defendant knew of the Tahoe's damage. He pointed to defendant's responses to interrogatories wherein it acknowledged repairs to the Tahoe. Defendant stated that it had some paint work performed to the vehicle's left side prior to its sale to plaintiff. Further, defendant's repair orders for the paint work were dated July 10, 1996, several days before plaintiff's purchase.

Plaintiff also submitted the deposition testimony of his expert William Anderton. Anderton inspected the Tahoe on December 26, 1999, and concluded that the vehicle had been involved in one or more collision impacts that required straightening and/or repainting of the left body panels. Anderton testified that significant areas of the repairs were incomplete and/or poorly repaired and thus unacceptable by industry standards for a new vehicle. Moreover, the left-side panels had been repainted more than once. Anderton could not place specific dates on the various defects that he observed on the vehicle. He stated that the repaint-related defects should have been obvious to a professional working in the automobile sales or repair business.

On December 12, 2001, the trial court granted defendant's motion for summary judgment on both counts of plaintiff's complaint, finding that plaintiff's expert did not state that defendant's repairs were faulty; there was no evidence that the vehicle was not damaged while in plaintiff's possession; there was no expert opinion as to when the vehicle was damaged; and hinge repair by defendant was inadmissible through Anderton's testimony. The court awarded defendant $712.50 in attorney fees and costs.

Plaintiff appeals, arguing that there exist genuine issues of material fact with respect to both counts of his complaint. On the Consumer Fraud Act claim, he argues that issues exist regarding (1) the extent of the pre-sale damage to the vehicle; (2) whether a misrepresentation of a material fact was made to plaintiff; and (3) defendant's intent. With respect to the common-law fraud claim, plaintiff argues that a triable issue exists regarding whether defendant made a false statement of a material fact.

## II. ANALYSIS

### A. Standard of Review

■ Summary judgment is properly granted if the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there exists no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2000); *Stone v. Clifford Chrysler-Plymouth, Inc.*, 333 Ill. App. 3d 363, 367 (2002). The nonmovant need not prove its case at the summary judg-

ment stage (*Bickerman v. Wosik*, 245 Ill. App. 3d 436, 438 (1993)), but must come forward with evidence that establishes a genuine issue of material fact (*Salinas v. Chicago Park District*, 189 Ill. App. 3d 55, 59 (1989)). We review *de novo* a grant of summary judgment. *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 648 (2001).

### B. Consumer Fraud Act Count

■ The elements of a claim under the Consumer Fraud Act are (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) the deception occurred in the course of conduct involving trade and commerce. *Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 542 (1992).

■ Section 2 of the Consumer Fraud Act defines what constitutes an unlawful practice under the statute. It provides, in relevant part:

> "§ 2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresenta- tion or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppres- sion or omission of such material fact ***." 815 ILCS 505/2 (West 2000).

Thus, an omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud. *Connick v. Suzuki Mo- tor Co.*, 174 Ill. 2d 482, 504 (1996). A material fact exists where a buyer would have acted differently knowing the information, or if it concerns the type of information upon which a buyer would be expected to rely. *Connick*, 174 Ill. 2d at 505.

### 1. *Extent and Knowledge of Pre-Sale Damage*

Plaintiff first contends that there exists a genuine issue of mate- rial fact regarding the extent of the pre-sale damage to the Tahoe. Plaintiff argues that defendant had a duty under the Franchise Act to disclose the Tahoe's accident damage and that its failure to do so constituted a misrepresentation or omission of a material fact.

■ Section 5 of the Franchise Act provides, in relevant part:

> "A motor vehicle dealer shall disclose to the purchaser before delivery of the new motor vehicle, in writing, any damage that the dealer has *actual knowledge* was sustained or incurred by the mo- tor vehicle at any time after the manufacturing process was complete but before delivery of the vehicle to the purchaser. This disclosure is not required when the cost to repair does not exceed 6% of the manufacturer's suggested retail price of the vehicle based upon the dealer's actual retail repair cost, including labor, parts, and materials if the damage is repaired or the retail estimate to repair the vehicle if it is not repaired.

\*\*\*

*If disclosure is not required under this Section,* a purchaser may not revoke or rescind a sales contract due to the fact the new vehicle was damaged and repaired before completion of the sale. In that circumstance, *nondisclosure does not constitute a misrepresentation or omission of fact."* (Emphasis added.) 815 ILCS 710/5 (West 2000).

■ Plaintiff argues that summary judgment was improper because he presented evidence that the cost to properly repair the vehicle would have exceeded 6% of its suggested retail price, thus triggering a disclosure obligation by defendant. We agree.

Anderton's report noted that the Tahoe's repairs were incomplete and/or of poor quality and thus unacceptable by industry standards for a new vehicle. Although he was unable to link the vehicle's damage to any specific dates, Anderton's testimony did not rule out the possibility that the damage occurred while the vehicle was in defendant's possession. Klein's report noted that the total cost of repairs, including parts, labor, supplies, and taxes, equaled $2,099. Because the suggested retail price of the Tahoe was $30,464, Klein's estimate of the cost of repairs exceeded 6%.

Plaintiff also raised a triable issue regarding defendant's actual knowledge about the damage. The Franchise Act requires a dealer to disclose accident damage that exceeds the 6% threshold where the dealer has "actual knowledge" of the damage. 815 ILCS 710/5 (West 2000). Defendant acknowledged that it had certain paint work performed to the vehicle's left side prior to its sale to plaintiff. Moreover, Anderton testified that the paint defects should have been obvious to a professional working in the automobile sales business.

For these reasons, plaintiff raised a genuine issue of material fact regarding the extent of the pre-sale accident damage to the Tahoe.

### 2. *Misrepresentation and Omission*

■ Plaintiff next argues that there exists a genuine issue of material fact regarding whether defendant committed deceptive acts. Plaintiff first argues that Gallivan's "beautiful new truck" statement constituted a misrepresentation. He contends that the word "new" was a material fact, not a subjective opinion, and that the term implied that the vehicle was free from damage and defect. Second, plaintiff contends that defendant's failure to disclose the Tahoe's accident damage was a material omission. He argues that, according to the Franchise Act, the Tahoe was not new because the extent of its damage was enough to trigger a duty to disclose to plaintiff the extent of the vehicle's damage.

We conclude that plaintiff raised a triable question as to whether

defendant committed deceptive acts. With respect to Gallivan's statement, plaintiff raised a triable issue as to whether the statement constituted a subjective opinion or a statement of fact. See *Miller*, 326 Ill. App. 3d at 649 (salesperson's description of a used automobile as "executive driven" is sufficiently susceptible of interpretation as a factual description of the vehicle's history); *Totz v. Continental Du Page Acura*, 236 Ill. App. 3d 891, 905 (1992) ("[i]f an individual makes a statement that might otherwise be considered an opinion, but does not specifically express it as his or her opinion, the statement will be considered a factual representation if it would be reasonable for the other party to treat it as such"). We are not convinced by defendant's argument that, because Gallivan was not the salesperson but merely the service department manager, the result should differ here. It is certainly conceivable that a reasonable person might place more weight on a technician's evaluation of a vehicle than he or she would place on a salesperson's statement.

We also agree with plaintiff that there exists a triable issue regarding whether defendant's failure to disclose the Tahoe's damage constituted a material omission. As we concluded above, plaintiff raised a triable issue on the question of whether defendant's repairs were inadequate and whether the cost to adequately repair the Tahoe exceeded the 6% threshold under the Franchise Act. The Franchise Act states that, if disclosure is not required, then nondisclosure does not constitute a misrepresentation or omission of fact. 815 ILCS 710/5 (West 2000). We conclude that the converse is true: the failure to disclose when there is a duty to do so constitutes a misrepresentation or an omission of fact. Thus, summary judgment was inappropriate on this issue.

### 3. *Intent*

Plaintiff next argues that there exists a question of material fact regarding defendant's intent. He asserts that Gallivan made the statement about the vehicle with the intent that plaintiff rely on it.

■ Under the Consumer Fraud Act, a defendant need not have intended to deceive a plaintiff; innocent misrepresentations or material omissions intended to induce the plaintiff's reliance are actionable. *Miller*, 326 Ill. App. 3d at 655. Circumstantial evidence may be used to establish the seller's intent. *Miller*, 326 Ill. App. 3d at 658.

■ Defendant contends that, because Gallivan played no role in the sale to plaintiff, he obviously could not have intended to induce plaintiff's reliance on the statement. Plaintiff responds that it is sufficient that defendant's employee, regardless of which department he worked in, made the statement.

We agree with plaintiff that intent is a triable issue. The sufficiency of Gallivan's involvement in the sale to plaintiff and whether or not his alleged statement constitutes an opinion or a statement of fact are all proper questions for the trier of fact and should not have been determined at the summary judgment stage.

In sum, we conclude that summary judgment was inappropriate on the Consumer Fraud Act count.

### C. Common-Law Fraud Count

Plaintiff next argues that he raised a triable question on his common-law fraud count.

■ The elements of common-law fraud are (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Connick*, 174 Ill. 2d at 496. The first element encompasses three requirements: (1) the defendant must make a misrepresentation; (2) it must involve a fact; and (3) the misrepresentation must be material. *Miller*, 326 Ill. App. 3d at 649.

■ With respect to the first element, plaintiff contends that defendant represented the car as "new" and that this characterization was false because the car had sustained accident damage. As we discussed above, plaintiff raised a genuine issue of material fact on the misrepresentation issue. The fact finder could conclude that defendant represented that the Tahoe was a new vehicle, when defendant had inadequately repaired the vehicle before plaintiff's purchase and had failed to inform plaintiff of the damage when it had a duty to do so. We also addressed above the second requirement of the first element, that the misrepresentation involve a fact. We concluded that the issue of whether Gallivan's statement was an opinion or statement of fact raised a triable question.

We conclude that plaintiff raised a triable issue on the question of defendant's knowledge of the accident damage. Again, as we discussed above, defendant acknowledged that it had certain paint work performed on the Tahoe prior to plaintiff's purchase. Further, Anderton testified that the paint defects should have been obvious to a professional in the industry.

Plaintiff raised a question for the trier of fact with respect to defendant's intent. Defendant's admission that it performed paint work on the Tahoe prior to plaintiff's purchase, coupled with its alleged failure to disclose the damage when it had a duty to do so, is evidence from which a trier of fact could conclude that defendant intended that Gallivan's statement induce plaintiff to act.

Plaintiff next pleaded that he relied on the truth of Gallivan's statement. We believe that a trier of fact could conclude that plaintiff relied on the statement in connection with his purchase and that he would not have purchased the car had he known that it had sustained accident damage.

Defendant asserts that plaintiff failed to prove the foregoing elements by clear and convincing evidence and thus summary judgment was proper. We disagree. Plaintiff is not required to prove his case at the summary judgment stage. *Bickerman*, 245 Ill. App. 3d at 438. Rather, he must come forward with some evidence that establishes a genuine issue of material fact. *Salinas*, 189 Ill. App. 3d at 59.

We conclude that summary judgment on the common-law fraud count was inappropriate.

For the foregoing reasons, the judgment of the circuit court of Lake County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

HUTCHINSON, P.J., and McLAREN, J., concur.