ERIC CHECK, Plaintiff-Appellee, v. CLIFFORD CHRYSLER-PLYMOUTH OF BUFFALO GROVE, INC., Defendant-Appellant.

First District (5th Division)   No. 1—01—4095

Opinion filed June 13, 2003.—Rehearing denied September 3, 2003.

Edward M. Rothschild, of Buffalo Grove, for appellant.

Krohn & Moss, Ltd., of Chicago (Scott M. Cohen, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

This dispute arises out of plaintiff Eric Check's purchase of a new 1997 Jeep Cherokee (Cherokee) from defendant Clifford Chrysler-Plymouth of Buffalo Grove, Inc. (Clifford). Following a trial in the circuit court of Cook County, a jury found defendant: (1) not liable for an alleged violation of the Illinois Motor Vehicle Franchise Act (815 ILCS 710/1 *et seq.* (West 1996)); (2) liable for common law fraud; and (3) liable for breaching the implied warranty of merchantability pursuant to the Magnuson-Moss Warranty Federal Trade Commission Improvement Act (Magnuson-Moss Act) (15 U.S.C. § 2301 *et seq.* (1994)), awarding plaintiff $6,000 in actual damages and $75,000 in punitive damages.

Defendant filed posttrial motions. The trial court vacated the verdict on the common law fraud claim and ordered a new trial. The trial court upheld the verdict on the Magnuson-Moss Act claim. As the

trier of fact in a simultaneous bench trial, the trial court found that defendant violated the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1996)). The trial court entered a judgment of $2,500 for actual damages and $20,000 in punitive damages. The trial court also awarded plaintiff $36,110.90 in attorney fees and costs. Defendant appeals.

The record on appeal discloses the following facts. In February 1997, Clifford received the Jeep at issue, which had a manufacturer's suggested retail price (MSRP) of $32,045, from the Chrysler Corporation. In March 1997, the Jeep was vandalized, along with other vehicles on Clifford's lot. The Jeep was scratched, as if by a key, from the left front fender to the left rear quarter panel. Clifford hired Casten Body Shop Carstar, Inc. (Casten), to repair the damage to the Jeep. Clifford requested that the entire left side of the Jeep be repainted. Casten billed Clifford $740.80 for the repair work and labor.

On June 9, 1997, plaintiff purchased the Jeep from Clifford. Clifford did not disclose to plaintiff that the Jeep had been scratched and repainted. Peter Clifford, the general manager of defendant, testified that he was aware that the Illinois Motor Vehicle Franchise Act required disclosure of any repair of the vehicle exceeding 6% of the vehicle's MSRP. Peter testified that the repair order would have been placed in a service file and, had it been deemed a major repair, into the sales "deal jacket." Peter testified that there was no note or repair order or note in the deal jacket for the Jeep; thus, the salesperson and plaintiff would not have been aware of the repair order. Peter stated that Clifford "did not specifically not want [plaintiff] to know" about the repair. Peter also testified that Casten had repaired many cars for Clifford over the years without having a quality problem.

Plaintiff testified that in August 1997, he noticed a wave or ripple on the driver's side of the Jeep. Upon further examination, plaintiff noticed that paint on the driver's side of the Jeep was flaking and chipping. Plaintiff also noticed paint overspray around the door lock and bumpers. Plaintiff telephoned Clifford about his discovery. According to plaintiff, the salesman said he had no knowledge of the Jeep being damaged, but would look into it. According to plaintiff, the salesman never telephoned him.

Plaintiff telephoned Clifford a second time, speaking to Kevin Clifford, whom plaintiff described as a general manager of Clifford. Plaintiff testified that Kevin stated that he would check into the matter, explaining that vehicles are sometimes damaged in transit from Chrysler. Plaintiff testified that Kevin telephoned him the next day, stating that he had no record of the Jeep being damaged and suggesting that plaintiff contact Chrysler. Plaintiff sent a letter to Chrysler

and was contacted by a Chrysler employee who told plaintiff that the Jeep was not damaged in transit to Clifford. Plaintiff testified that he telephoned Clifford several times over the next three weeks, speaking to several people before being told that the Jeep had been vandalized on the lot prior to sale.

Plaintiff later spoke with three of Clifford's employees, seeking to return the Jeep and receive a refund or to exchange his Jeep for another. Clifford offered to repaint the Jeep to plaintiff's satisfaction, but this suggestion was not acceptable to the plaintiff.

William Thomas Carol, who had been working in the automobile collision repair business since 1983, testified that he was retained by plaintiff to examine the Jeep's paint problems and give an estimate of the cost to "return it back to pre-whatever was done to it condition." William J. Anderton, a consultant to the automotive industry on the subject of designing cars that are easier to repair and more difficult to damage, was also retained by plaintiff. These witnesses testified that the repainting of the Jeep lacked gloss and exhibited adhesion problems causing the paint to chip. Both witnesses testified that these problems could have a variety of causes.

Carol testified that he could not recall whether he had performed this type of repair on a new Jeep but was often asked to repair new BMWs that had been scratched. Carol testified that in those cases it was not necessary to strip the car down to the bare metal to repair a scratch. Carol also testified that Casten's work actually made the condition of the car worse than the scratch did. According to Carol, had he had the job from the beginning, he may have charged between $1,000 and $1,500. Carol testified that he would now have to strip the paint down to the bare metal to completely redo the work, at an estimated cost of $2,011.21. Carol testified that he could not have charged $50 to $100 less and still have made a profit.

Anderton, who inspected the Jeep in September 1998, testified that the paint on the repainted areas was probably 50% thicker than that on the rest of the Jeep. Anderton testified that he probably would have approached the repair job in the same manner as Casten, but that something apparently went wrong in the process. Anderton estimated that he would have charged approximately $1,300 to $1,500 to repair the scratch in the first instance, but perhaps as much as $1,800 to repair the Jeep now. Anderton stated that if the repair work had been done well, so that no one could detect it, there would be no devaluation of the Jeep.

Drew Cheshier, Casten's body shop manager, testified that Casten stands behind its work with a lifetime warranty. Cheshier testified that the Jeep at issue was repaired by "feathering," a technique in

which the scratch is sanded to smooth it and fade the level of the scratch into the existing panel, which allows painting and clear coating to be applied to a smooth surface. Cheshier testified that the Jeep was given two coats of primer, two coats of base color, and two coats of clear coat. Cheshier acknowledged that a primer or seal coat is not itemized on its invoice to Clifford. Cheshier testified that Clifford did not ask Casten to do the job for less than a certain amount, and had Clifford asked for a cheap cover-up job, he would have refused.

According to Cheshier, he inspected the Jeep in June 1998, at Clifford's request. Cheshier stated that he was not told in advance that he was looking at work performed by Casten. Cheshier opined that the paint job was not terrible. Cheshier testified that he did not observe any chipping or peeling paint.

Following closing arguments and deliberations, the jury found defendant: (1) not liable for an alleged violation of the Illinois Motor Vehicle Franchise Act; (2) liable for common law fraud; and (3) liable for breaching the implied warranty of merchantability pursuant to the Magnuson-Moss Act, awarding plaintiff $6,000 in actual damages and $75,000 in punitive damages. The trial court granted Clifford's post-trial motion in part, vacating the verdict on the common law fraud claim, and ordering a new trial thereon. The trial court upheld the verdict on the Magnuson-Moss Act claim. The trial court further found defendant liable for violating the Consumer Fraud and Deceptive Business Practices Act. The trial court awarded plaintiff $2,500 for actual damages and $20,000 in punitive damages. Clifford now appeals.

I

■ Clifford argues that the trial court erred in not reversing the verdict on the common law fraud claim, instead of ordering a new trial. A trial court should enter a judgment *non obstante verdicto* (judgment *n.o.v.*) only if all of the evidence, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the moving party that no contrary verdict could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967). That standard applies to a trial court's denial of a motion for judgment *n.o.v. Knight v. Haydary*, 223 Ill. App. 3d 564, 569, 585 N.E.2d 243, 247 (1992). Whether that standard is met is reviewed *de novo*. *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 132, 720 N.E.2d 242, 257 (1999).

■ In contrast, the standard of review for the granting or denial of a motion for a new trial is whether the trial court abused its discretion. *Pekelder v. Edgewater Automotive Co.*, 68 Ill. 2d 136, 138, 368

N.E.2d 900, 901 (1977). An abuse of discretion occurs when the ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view. *People v. Illgen*, 145 Ill. 2d 353, 364, 583 N.E.2d 515, 519 (1991). An application of impermissible legal criteria also justifies reversal. *Boatmen's National Bank of Belleville v. Martin*, 155 Ill. 2d 305, 314, 614 N.E.2d 1194, 1199 (1993).

■ In granting a new trial on the common law fraud claim, the trial court cited the rule that where verdicts returned in the same action are legally inconsistent, such verdicts must be set aside and a new trial granted. *Wottowa Insurance Agency, Inc. v. Bock*, 104 Ill. 2d 311, 316, 472 N.E.2d 411, 413 (1984). The courts exercise all reasonable presumptions in favor of the verdicts, and the verdicts are not legally inconsistent unless they are "absolutely irreconcilable." *Tedeschi v. Burlington Northern R.R. Co.*, 282 Ill. App. 3d 445, 448-49, 668 N.E.2d 138, 140 (1996), citing *Wottowa*, 104 Ill. 2d at 316, 472 N.E.2d at 413. The verdicts cannot be considered inconsistent if any "reasonable hypothesis" supports them. *Powell v. State Farm Fire & Casualty Co.*, 243 Ill. App. 3d 577, 581, 612 N.E.2d 85, 88 (1993). The issue is the jury's intent. *Mrowca v. Chicago Transit Authority*, 317 Ill. App. 3d 784, 786, 740 N.E.2d 372, 374 (2000).

■■ In this case, the jury found that Clifford did *not* violate the Illinois Motor Vehicle Franchise Act, section 5 of which provides in part as follows:

"A motor vehicle dealer shall disclose to the purchaser before delivery of the new motor vehicle, in writing, any damage that the dealer has actual knowledge was sustained or incurred by the motor vehicle at any time after the manufacturing process was complete but before delivery of the vehicle to the purchaser. This disclosure is not required when the cost to repair does not exceed 6% of the manufacturer's suggested retail price of the vehicle based upon the dealer's actual retail repair cost, including labor, parts, and materials if the damage is repaired or the retail estimate to repair the vehicle if it is not repaired.

\*\*\*

If disclosure is not required under this Section, a purchaser may not revoke or rescind a sales contract due to the fact the new vehicle was damaged and repaired before completion of the sale. In that circumstance, nondisclosure does not constitute a misrepresentation or omission of fact." 815 ILCS 710/5 (West 1996).

In contrast, the jury found Clifford liable for common law fraud, the elements of which are: (1) a false representation of a material fact; (2) by a party who knows or believes it to be false; (3) with the intent to induce a plaintiff to act; (4) reliance on the statement by the plaintiff; and (5) injury to the plaintiff as a result of that reliance. *Washington*

*Courte Condominium Ass'n-Four v. Washington-Golf Corp.*, 267 Ill. App. 3d 790, 814-15, 643 N.E.2d 199, 216 (1994). Fraud may also be based on the omission or concealment of a material fact if accompanied by the intent to deceive under circumstances that create the opportunity and duty to speak. *Washington Courte*, 267 Ill. App. 3d at 815, 643 N.E.2d at 216. The trial court reasoned that a verdict that Clifford did not violate the Illinois Motor Vehicle Franchise Act meant that the nondisclosure did not constitute a misrepresentation or omission of fact as a matter of law, which would be irreconcilable with the first element of common law fraud.

■ We agree. Indeed, as plaintiff has not contested the verdict on the Illinois Motor Vehicle Franchise Act claim, the issue is one of remedy. *Wottowa* states that the proper remedy is a new trial. In arguing for judgment *n.o.v.*, Clifford relies on *DiMarco v. City of Chicago*, 278 Ill. App. 3d 318, 662 N.E.2d 525 (1996), but that case addresses a conflict between a special interrogatory and a verdict, not a conflict between two verdicts. Clifford also cites *Engram v. Chicago Housing Authority*, 304 Ill. App. 3d 570, 710 N.E.2d 18 (1999), but this court never reached the issue of inconsistent verdicts in that case. Thus, a new trial was the proper relief to be granted.

However, in this case, by reversing and remanding only the common law fraud claim, the trial court failed to properly apply *Wottowa*, which refers to inconsistent verdicts *in the plural* being set aside and a new trial granted. If the jury's intent cannot be gleaned from legally inconsistent verdicts, the trial court cannot order a new trial on only one count. See *Mrowca*, 317 Ill. App. 3d at 786-87, 740 N.E.2d at 374-75. Thus, while the trial court did not err in ordering a new trial, it erred as a matter of law in ordering a new trial on only one of the verdicts.

## II

■ Clifford argues that the trial court erred in not reversing the jury verdict on the claim that it violated the Magnuson-Moss Act by breaching the implied warranty of merchantability. The Magnuson-Moss Act provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under *** [an] implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1) (1994). The Magnuson-Moss Act defines an implied warranty as "an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7) (1994). "[T]he provisions of section 2308 clearly demonstrate the policy of Magnuson-

Moss to sustain the protection afforded to consumers by implied warranties." *Szajna v. General Motors Corp.*, 115 Ill. 2d 294, 314, 503 N.E.2d 760, 769 (1986).

■ An implied warranty of merchantability arises under Illinois law pursuant to section 2—314 of the Uniform Commercial Code— Sales, which provides in part as follows:

"(1) Unless excluded or modified ***, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. ***

(2) Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description; and

***

(c) are fit for the ordinary purposes for which such goods are used[.]" 810 ILCS 5/2—314(1), (2)(a), (c) (West 1996).

Generally, with regard to automobiles, "[f]itness for the ordinary purpose of driving implies that the vehicle should be in a safe condition and substantially free of defects." *Overland Bond & Investment Corp. v. Howard*, 9 Ill. App. 3d 348, 354, 292 N.E.2d 168, 172-73 (1972). Breach of an implied warranty of merchantability also may occur where the warrantor has unsuccessfully attempted to repair or replace defective parts. See *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 326-27, 722 N.E.2d 227, 236 (1999). Whether an implied warranty has been breached is a question of fact. *Federal Insurance Co. v. Village of Westmont*, 271 Ill. App. 3d 892, 897, 649 N.E.2d 986, 990 (1995).

■ Clifford first asserts that "no fact suggesting any damage other than the repaired scratch or any unrepaired damage, flaking paint, peeling paint or anything of the sort, is pleaded in the 6 Counts, 117 paragraphs and 16 pages of [p]laintiff's Complaint." However, in order to preserve an issue for review, a party must object at trial and in a written posttrial motion. *Kel-Keef Enterprises, Inc. v. Quality Components Corp.*, 316 Ill. App. 3d 998, 1021, 738 N.E.2d 524, 540 (2000). "All defects in pleadings, either in form or substance, not objected to in the trial court are waived." 735 ILCS 5/2—612(c) (West 1996). Under the doctrine of aider by verdict, a jury verdict cures not only all formal and purely technical defects in the complaint, but any defect in failing to allege or alleging imperfectly any substantial facts which are essential to the cause of action. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 60-61, 645 N.E.2d 888, 893 (1994). Clifford has not shown that it objected at trial; a review of its posttrial motion shows that it made no such argument therein, resulting in waiver on appeal. Clifford referred to defects in the pleading in passing in its motion for

reconsideration. However, this objection was not only untimely, but also did not argue that these defects by themselves warranted a reversal, and cited no authority in connection with its observations. Indeed, on appeal, Clifford cites no authority for the proposition that such defects would mandate a reversal, which also results in waiver. *In re G.O.*, 191 Ill. 2d 37, 46, 727 N.E.2d 1003, 1008 (2000); see 177 Ill. 2d R. 341(e)(7).

Nor is there any reason to relax the waiver rule in this case. Paragraph 44d of plaintiff's complaint alleges that "[t]he damage sustained by the [Jeep] requires that the [Jeep] be repainted." Paragraph 60 claims that plaintiff incurred losses including excessive repair costs, as well as the cost of loss of use of the Jeep and of alternate transportation. Plaintiff's trial brief referred to the testimony his experts would give about the paint failure. Clifford concedes that Anderton's report regarding Casten's paint job was timely filed and cited by plaintiff in opposing Clifford's motion for summary judgment. Clifford cannot claim to have been surprised on this point.

Clifford's remaining argument is that the verdict on the implied warranty claim is legally inconsistent with the verdict on the Illinois Motor Vehicle Franchise Act claim. Applying the analysis set forth with regard to the fraud claim, the most Clifford could obtain on this issue is a new trial. It is against that standard that Clifford's claim of inconsistent verdicts is analyzed.

■ A misrepresentation or omission of fact is *not* an element of a claim of breach of the implied warranty of merchantability. The trial court's memorandum opinion and order denying Clifford's posttrial motion states that "ample evidence was presented from numerous witnesses that the vehicle was sold to the [p]laintiff in a defective state including improper painting which needed significant repair to restore to a new condition." Clifford claims that the trial judge "did not discuss, or apparently take into consideration, the fact that the jury found that the vehicle was 'repaired', returned to a good and sound condition, before being sold to [p]laintiff."

■ However, a finding that the Jeep was repaired is *not* implicit in the verdict on the Illinois Motor Vehicle Franchise Act claim. The 6% figure applies not only to repair costs, but also to "the retail estimate to repair the vehicle if *it is not repaired.*" (Emphasis added.) 815 ILCS 710/5 (West 1996). The jury heard evidence that the defective painting of the Jeep by Casten for Clifford actually worsened the condition of the Jeep. The jury instructions defined "repair" but did not require that the jury decide whether the Jeep had been repaired. The jury could have concluded that the defective paint job was not a

repair and that it rendered the Jeep unmerchantable as a new car. See also *Hart v. Boehmer Chevrolet Sales, Inc.*, 337 Ill. App. 3d 742, 750, 787 N.E.2d 350, 355-56 (2003) (adequacy of repair is an issue for the trier of fact). Clifford does not suggest that a Jeep with a paint job so defective that it would require stripping and repainting half of the Jeep to repair would pass without objection in the trade as a new car. Accordingly, Clifford has failed to show the verdicts on the Illinois Motor Vehicle Franchise Act and implied warranty claims were legally inconsistent.

## III

█ Clifford next contends that the trial court erred in finding that Clifford violated the Consumer Fraud and Deceptive Business Practices Act. The trial judge, as the trier of fact, is in a superior position to a court of review to observe the demeanor of the witnesses while testifying, judge their credibility, and determine the weight their testimony should receive. *In re Application of the County Treasurer & ex officio County Collector of Cook County*, 131 Ill. 2d 541, 549, 546 N.E.2d 506, 510 (1989). Thus, where the testimony conflicts, the trial court's findings will not be disturbed unless they are against the manifest weight of the evidence. *In re Application of the County Treasurer*, 131 Ill. 2d at 549, 546 N.E.2d at 510. The trial court's conclusions of law are reviewed *de novo. Eychaner v. Gross*, 202 Ill. 2d 228, 252, 779 N.E.2d 1115, 1130 (2002).

█ Section 2 of the Consumer Fraud and Deceptive Business Practices Act prohibits:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2 (West 1996).

Clifford argues that the trial court's finding that Clifford violated this statute is legally inconsistent with the jury's verdict on the Illinois Motor Vehicle Franchise Act claim.

█ The Consumer Fraud and Deceptive Business Practices Act claim was tried before the judge, not the jury. An action under the Consumer Fraud and Deceptive Business Practices Act is created by the legislature and, as such, does not confer the right to a jury trial. *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 75, 643 N.E.2d 734, 754 (1994). Clifford's brief states that "counsel could find no case discussing a situation where the [c]ourt, acting as trier of fact on a

non-jury issue, reached a different conclusion as to the same fact as the jury and entered both judgments in the same case." Although not controlling, where there have been separate criminal trials before different triers of fact, the acquittal of one defendant is of no consequence to the trial of the codefendant, even where the codefendant is convicted on an accountability theory, because each trier of fact brings different experience, values, and preconceptions to its assessment of the evidence presented. See *People v. Wehmeyer*, 155 Ill. App. 3d 931, 509 N.E.2d 605 (1987) (and cases cited therein). This court is persuaded by the same logic that a legal inconsistency is not reversible error *per se* in this context.

Moreover, the trial court's finding on this count was not based on the nondisclosure that the Jeep had been scratched prior to sale. As Clifford notes, the trial judge found that Clifford:

> "improperly and without regard for the potential buyer knowingly had the damaged car repaired in a substandard and slip-shod [*sic*] fashion, sold the vehicle as new without any prior inspection of the repair, lied to the [p]laintiff about any knowledge of the repair after it was discovered, unfairly stalled the [p]laintiff for about two weeks and only belatedly offered the plaintiff another repair at the same facility which had incompetently repaired the vehicle originally."

Clifford takes issue with many of the trial judge's supporting findings. Clifford also questions whether some of the bases quoted above may legally support a judgment under the Consumer Fraud and Deceptive Business Practices Act.

For example, Clifford notes that the trial judge found that the paint job was performed by a part-time student named Todd Heybeck, when the trial testimony established that Heybeck appraised the Jeep, but there was no evidence that Heybeck painted the Jeep. Plaintiff's brief concedes this point. Similarly, the trial court's reliance on the actions of Clifford's agents after the sale was improper. Plaintiff can state a valid claim of consumer fraud only where premised upon acts or statements made prior to the purchase, as plaintiff can recover damages under the statute only for injuries that were proximately caused by the consumer fraud. See *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 502, 675 N.E.2d 584, 594 (1996).

■ Ultimately, however, it is the judgment of the trial court, and not what else may have been said by the trial court, that is on appeal to a court of review. *Eychaner*, 202 Ill. 2d at 262, 779 N.E.2d at 1136. If there is competent evidence sufficient to sustain the trial court's decision it will be affirmed, regardless of the views of the trial court. *Eychaner*, 202 Ill. 2d at 262, 779 N.E.2d at 1136. Generally, to recover

under the Consumer Fraud and Deceptive Business Practices Act, a plaintiff need only show: (1) a deceptive act or practice; (2) intent on the defendant's part that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce. *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 75, 643 N.E.2d 734, 754 (1994).

█ In this case, the evidence supports the conclusion that Clifford sold a Jeep with a substantially defective paint job as new. The plaintiff need not show that defendant intended to deceive, but only that it intended that plaintiff rely on its act or information; even an innocent misrepresentation may be actionable under the Consumer Fraud and Deceptive Business Practices Act. *Griffin v. Universal Casualty Co.*, 274 Ill. App. 3d 1056, 1065, 654 N.E.2d 694, 700-01 (1995). Thus, there is sufficient evidence to sustain the decision that Clifford violated the statute.

## IV

█ Clifford argues that the trial court should not have allowed punitive damages under the Consumer Fraud and Deceptive Business Practices Act. Section 10a(a) provides in part:

"(a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper; provided, however, that no award of punitive damages may be assessed under this Section against a party defendant who is a new vehicle dealer or used vehicle dealer within the meaning of Chapter 5 of the Illinois Vehicle Code unless the conduct engaged in was willful or intentional and done with evil motive or reckless indifference to the rights of others." 815 ILCS 505/10a(a) (West 1996).

Because of their penal nature, punitive damages are not favored, and Illinois courts must be cautious in seeing that they are not improperly or unwisely awarded. *E.g., In re Estate of Wernick*, 127 Ill. 2d 61, 83, 535 N.E.2d 876, 886 (1989).

█ The trial court found that Clifford "improperly and without regard for the potential buyer knowingly had the damaged car repaired in a substandard and slip-shod [*sic*] fashion and sold the vehicle as new without any prior inspection of the repair." The evidence supports the finding that Casten repainted the Jeep in a substandard manner. The same cannot be said of the trial court's conclusion that Clifford knew that the work was performed in a substandard manner.

The trial court opined that it was "significant that Casten's Body Shop was clearly not a competent operation." As noted above, the

finding regarding Todd Heybeck's role at Casten was not supported by the evidence at trial. Moreover, Cheshier testified that Casten had an "ICAR Gold Class" certification and that all of his major technicians have been certified in every aspect of automobile repairs. One of plaintiff's experts, Mr. Carol, testified that an "ICAR certified shop" was a first-class shop that made an effort to train their staff. Carol later contradicted himself, testifying that "ICAR" really did not mean anything and was not a certification. However, plaintiff's other expert, Mr. Anderton, opined that "ICAR" was a recognized standard and not meaningless.

Plaintiff's brief claims that the trial court's finding on this point was supported by Peter Clifford's testimony that he would not want to send cars to be inspected by people who had never done repairs themselves, in light of Cheshier's testimony that the vehicle was appraised by Heybeck, who did not perform repairs. However, a review of that testimony shows that Peter also testified that he did not know who performed the estimate and that he believed that the people who had worked on Clifford's cars were qualified because if they had been unqualified, it would have shown up in the work they performed for Clifford and caused Clifford to discontinue doing business with Casten.

In addition, plaintiff did not establish that Peter was an expert in automobile repair. Rather, plaintiff presented experts who testified that "ICAR" certification was a positive indication. Neither the trial court nor plaintiff points to any expert opinion regarding the general competence of Casten. This evidence does not support the conclusion that Casten was generally incompetent.

Furthermore, even assuming *arguendo* that Casten *was* incompetent, the question would remain as to the evidence supporting a finding that Clifford *knew* Casten was incompetent. Peter Clifford testified that Casten had repaired many cars for Clifford over the years without having a "quality problem." Peter's testimony on this point stands uncontradicted.

The trial court found that the defense testimony—particularly that of Peter Clifford—was "evasive and often less than truthful." However, the deferential standard of review for the trial court's findings of fact applies where conflicting testimony exists. *In re Application of the County Treasurer*, 131 Ill. 2d at 549, 546 N.E.2d at 510. Where the testimony of a witness is neither contradicted by positive testimony or circumstances, nor inherently improbable, and the witness has not been impeached, the testimony cannot be disregarded by the trier of fact. *Bazydlo v. Volant*, 164 Ill. 2d 207, 215, 647 N.E.2d 273, 277 (1995). Neither plaintiff nor the trial court identified any

evidence impeaching Peter Clifford on the issue of whether Clifford had past problems with Casten's work. Nor was the testimony inherently improbable. Thus, even assuming *arguendo* that Casten was incompetent, there was no evidence that Clifford knew it.

The trial court also based its ruling on a finding that "the evidence is also clear that the [d]efendant had no policy or practice by which the quality of the work was checked." However, Peter Clifford testified that a "prep manager" was responsible for checking Casten's work. Peter Clifford also testified on re-cross-examination that if there was a question as to whether damage to a car approached 6% of the MSRP, the prep manager "sends up flares" and lets everyone know about it. Again, this testimony was not contradicted or impeached. Nor was the testimony inherently improbable.

The trial court further found that Clifford "took affirmative steps to conceal the information that the vehicle has been damaged and repaired from their own sales representatives." However, the Illinois Motor Vehicle Franchise Act permits nondisclosure where the actual or estimated cost of the repair does not exceed 6% of the vehicle's MSRP. Thus, a showing of knowledge or recklessness regarding the Casten paint job would be necessary to support an award of punitive damages. Indeed, a review of the trial court's memorandum opinion and order shows that the trial court found the violation of the Consumer Fraud and Deceptive Business Practices Act was related to the substandard paint job, not the initial scratch. Moreover, neither the trial court nor plaintiff points to any evidence suggesting that Clifford's salesperson would have disclosed that the Jeep had been scratched and repainted had that information been provided to the salesperson.

Most troubling is the trial court's reliance on the behavior of Clifford's agents after plaintiff notified Clifford of the problem with the paint job. As noted above, a claim of statutory consumer fraud is based only upon acts or statements made prior to the date of purchase, as plaintiff can recover damages under the statute only for injuries that were proximately caused by the consumer fraud. See *Connick*, 174 Ill. 2d at 502, 675 N.E.2d at 594. This misapplication of the statute was harmless in the context of finding liability but is a far more serious error in the context of awarding punitive damages.

The remaining basis cited by the trial court to support a punitive award was Clifford's failure to inspect or detect the defective paint job performed by Casten. However, even viewing the record in the light most favorable to plaintiff, there is a lack of evidence that Clifford's actions in this case were intentional, willful, or recklessly indifferent to the consumers' rights, as opposed to simply negligent. Moreover,

even if the record supported a finding of reckless indifference, a punitive damage award against a new car dealer requires that the conduct be willful or intentional *"and* done with evil motive or reckless indifference to the rights of others." (Emphasis added.) 815 ILCS 505/10a(a) (West 1996). Accordingly, the punitive damage award must be reversed.

## V

■ Finally, Illinois courts have long recognized that a plaintiff shall have only one satisfaction for an injury, regardless of the availability of multiple theories of recovery. *Dial v. City of O'Fallon*, 81 Ill. 2d 548, 558, 411 N.E.2d 217, 222 (1980). Plaintiff has been awarded compensatory damages. This court has concluded that plaintiff was not entitled to punitive damages. Thus, this court need not remand the remaining counts for a new trial, as plaintiff has received the satisfaction for his injury available under the law. Pursuant to Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)), this court reduces the amount of the judgment to $2,500, representing the actual damages awarded by the trial court.

■ The trial court's award of attorney fees is also affirmed, as Clifford raised no objection thereto. Plaintiff seeks additional fees under the Magnuson-Moss Act and the Consumer Fraud and Deceptive Business Practices Act for defending the judgment on appeal. Although this court has reversed the punitive damage award, plaintiff remains the prevailing party on appeal. Accordingly, the case is remanded to the circuit court in order that plaintiff may petition for additional fees in accord with *Chesrow v. Du Page Auto Brokers, Inc.*, 200 Ill. App. 3d 72, 557 N.E.2d 1301 (1990).

For all of the aforementioned reasons, the judgment of the circuit court is: (1) vacated with respect to the verdicts on the Illinois Motor Vehicle Franchise Act and common law fraud claims; (2) affirmed on the implied warranty of merchantability claim; (3) affirmed on the Consumer Fraud and Deceptive Business Practices Act claim; (4) reversed as to the punitive damage award; and (5) affirmed as to the matter of attorney fees and costs. The case is remanded for further proceedings in accord with this order.

Vacated in part, affirmed in part, reversed in part and remanded.

REID, J., concurs.

JUSTICE QUINN, specially concurring in part and dissenting in part:

I concur with the majority in every respect other than as to the issue of whether the jury's verdicts were inconsistent. The jury's verdicts that Clifford did not violate the Illinois Motor Vehicle Franchise Act but did commit common law fraud do not necessarily conflict with one another. The jury could have found all of the elements of common law fraud were proven but that the damage sustained prior to delivery of the vehicle had a value which was less than 6% of the manufacturer's suggested retail price of the vehicle. Indeed, the majority of the evidence presented at trial would support this conclusion. As the verdicts on these two counts are supported by a reasonable hypothesis, they are not "absolutely irreconcilable" and therefore the verdicts are not legally inconsistent. See *Tedeschi v. Burlington Northern R.R. Co.*, 282 Ill. App. 3d 445, 448-49, 668 N.E.2d 138, 140 (1996).

While I would reverse the trial court's holding that the jury verdicts are inconsistent, I concur with the majority that plaintiff is entitled to have only one satisfaction for his injury. Therefore, I concur in all remaining aspects of the majority's opinion.