# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Anderson v. Anderson*, 2011 IL App (1st) 110034

---

| | |
|---|---|
| Appellate Court Caption | YOLANDA ANDERSON, Individually and as Mother and Next Friend of Ben Anderson IV, a Minor; ANITA ANDERSON; TAMIKA ANDERSON, Individually and as Mother and Next Friend of Tashawana Tshia Anderson, Darnell Devon Anderson, LaSharon Cerrell Anderson, and Sean Darnell Anderson, Minors, Plaintiffs-Appellees, v. SEAN D. ANDERSON and FRANK A. FRATTO, Defendants-Appellants. |
| District & No. | First District, Fifth Division<br>Docket Nos. 1-11-0034, 1-11-0036 cons. |
| Filed | September 30, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a collision of a van and another vehicle at an intersection, the trial court abused its discretion in setting aside the jury's verdicts finding that the driver of the van failed to prove his case against the driver of the other vehicle and that the minor passengers of the van failed to prove their case against either the driver of the van or the driver of the other vehicle and granting the passengers' motion for a new trial, since the verdicts were not inconsistent, the doctrine of alternative liability did not apply to shift the burden of proving causation, and the verdicts were not against the manifest weight of the evidence. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 06-M1-304569, 06-M1-304570, 07-M1-11311; the Hon. Diane M. Shelley, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Keely Hillison and Robert Kuehl, both of Parrillo, Weiss & O'Halloran, of Chicago, for appellant Sean D. Anderson.

Robert N. Hilbert and Julie Dressel Stahl, both of Hilbert, Lawler & Power, Ltd., of Chicago, for appellant Frank A. Fratto.

No brief filed for appellees.

Panel

PRESIDING JUSTICE EPSTEIN delivered the judgment of the court, with opinion.
Justices J. Gordon and Howse concurred in the judgment and opinion.

## OPINION

¶ 1    Defendants Sean D. Anderson and Frank A. Fratto appeal a ruling of the circuit court of Cook County granting a postjudgment motion for a new trial. Sean Anderson and Fratto contend that the trial court's ruling should be reversed because the jury's verdicts were not legally inconsistent or against the manifest weight of the evidence; thus the order granting a new trial was an abuse of the judge's discretion. Plaintiffs–Yolanda Anderson, Ben Anderson IV, Anita Anderson, Tamika Anderson, Tashawana Tshia Anderson, Darnell Devon Anderson, Lasharon Cerrell Anderson, and Sean Darnell Anderson (hereinafter collectively referred to as "passenger plaintiffs")–did not file a response brief in this appeal. We may reach the merits of an appeal even without an appellee's brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). For the following reasons, we reverse.

¶ 2                                    BACKGROUND
¶ 3    This controversy arose out of a vehicle collision on December 31, 2004 at the intersection of North Avenue and Cub Drive in Melrose Park. The vehicles in question were driven by Fratto and Sean Anderson. Fratto was driving his vehicle eastbound on North Avenue, changing lanes and preparing for a right turn about a block east of Cub Drive. Sean Anderson was driving westbound on North Avenue, preparing for a left turn onto Cub Drive. Sean Anderson was transporting several minor children, all of whom are passenger plaintiffs. The undisputed testimony is that Fratto was driving 30 to 35 miles per hour when he checked his mirrors, then looked forward to see Sean Anderson's vehicle several feet in front of his car. Unable to stop, Fratto crashed into Sean Anderson's van.

¶ 4    Sean Anderson filed suit against Fratto, bringing claims for personal injury due to Fratto's alleged negligence. The passenger plaintiffs filed suit against both Sean Anderson

-2-

and Fratto to recover for their alleged injuries. Fratto's insurance company brought a counterclaim against Sean Anderson as a subrogation action. In each answer, Fratto and Sean Anderson denied any negligence, instead accusing the other of negligence. The subrogation action was dismissed pursuant to settlement before the trial began. The remaining two claims were tried in 2010.

¶ 5                            1. Facts Regarding the Collision

¶ 6       At trial, Officer Alfonzo Rodriguez testified that he investigated the scene after the accident occurred. Officer Rodriguez testified that although he would have recorded such a statement if it had been made, his report does not state that either Sean Anderson or Fratto claimed he had a green light. Officer Rodriguez also confirmed that the intersection has a left-turn arrow in addition to a general green signal.

¶ 7       Next, Sean Anderson's attorney called Fratto, who testified that he was driving to an Arby's restaurant east of Cub Drive. Fratto testified that he was in the center lane within one block of the collision site traveling 30 to 35 miles per hour. According to Fratto, as he approached the intersection of North Avenue and Cub Drive, he noticed that the light was solid green and that there was a line of five or six cars in the westbound left-turn lane, waiting to turn. Fratto stated, "There were some in the intersection already. Some of them were in the intersection halfway." Fratto added that Sean Anderson's vehicle was first in line. Fratto looked into his passenger side view mirror to check the right lane before making a lane change, then looked up to see that Sean Anderson's vehicle had turned and was immediately in front of his vehicle. The vehicles collided, and Fratto testified that the force of the impact pushed the van onto its driver's side. Later, as part of his case in chief, Fratto again testified that the light at North Avenue and Cub Drive was green as he approached.

¶ 8       Sean Anderson testified that he was driving his minivan with six passengers, including his five children and one nephew. He confirmed that there is a left-turn arrow at the traffic light at North Avenue and Cub Drive. Sean Anderson also stated that when he arrived at the intersection, there were already "about two" vehicles in the left-turn lane. He testified that after "about five to ten seconds," the signal changed to a green arrow, although all other lanes had red lights. Sean Anderson confirmed that as the cars in the left-turn lane moved forward, his vehicle was hit by Fratto's vehicle on the passenger side, flipping the vehicle over.

¶ 9       Sean Anderson testified that he told Officer Rodriguez that he had a left-turn green arrow and that Fratto had a red light. On cross-examination, Sean Anderson claimed there were four cars in front of him in the left-turn lane when he came to the intersection.

¶ 10       Yolanda Anderson's son, Ben Anderson, testified that he was 14 years old at the time of the collision. While Ben Anderson claimed the traffic signal was showing a green left-turn arrow, on cross-examination he admitted he was sitting in the third row of Sean Anderson's vehicle and had been having a conversation with another passenger, Darnell Anderson, prior to the turn.

¶ 11       The passenger plaintiffs next called Tamika Anderson, mother of five passengers and wife to Sean Anderson. On cross-examination, Tamika Anderson claimed not to have spoken with her husband, Sean Anderson, about the collision, nor had she discussed the collision in

depth with her children. Fratto's attorney confronted Tamika Anderson with her complaint on behalf of the passenger plaintiffs, alleging that Sean Anderson failed to yield the right of way. She claimed to have never seen the complaint before her testimony.

¶ 12                                2. Facts Regarding Injuries

¶ 13        Officer Rodriguez testified that Sean Anderson complained of injuries but did not have any visible injuries. Finally, he further testified that his police report only notes five passengers in the vehicle driven by Sean Anderson and that none complained of injuries.

¶ 14        Lewis Knight, an account analyst at Gottlieb Memorial Hospital, testified as to hospital records of Sean Anderson's injuries. According to Gottlieb's records, Sean Anderson was treated for injuries that included "[r]ight chest pain, leg pain, and right foot pain," as well as a headache.

¶ 15        Sean Anderson also claimed that after his vehicle "turned over three times, so it was on the driver's side," he and the passengers had visible injuries after the accident, including ripped clothing and cuts from broken glass. Sean Anderson claimed other injuries, including pain in his neck, forearm, and leg. He testified that he was taken to the hospital by ambulance, received X-rays of his back, neck, and right foot, and was prescribed painkillers. Sean Anderson also testified that his treatment involved several months of follow-up visits to his family doctor in Melrose Park. He also alleged that he lost his job as a result of the injuries from the collision, which prevented him from performing physical labor.

¶ 16        Yolanda Anderson, mother of passenger plaintiff Ben Anderson, testified that she visited her son in the emergency room. According to Yolanda Anderson, Ben Anderson's foot was swollen, he was wearing a neck brace, and he had cuts on his face. Although she was able to take Ben Anderson home, she testified that he later complained of foot pain, which was diagnosed as a fracture. Yolanda Anderson testified that because of this fracture, Ben Anderson was put in a cast for months and kept on crutches, which kept him from attending school, playing sports, and living life normally.

¶ 17        Yolanda Anderson's son, Ben Anderson, testified that after the vehicle flipped twice and landed on the driver's side, his right leg was twisted under his seat. Afterward, Ben Anderson claimed that his head ached and that his face had cuts from glass shards, which had come from a broken window on the passenger side. Ben Anderson further testified that "I noticed most of my family members as the car flipped, we were all like piled on each other as the car flipped." Ben Anderson testified that he was taken from the scene on a stretcher, was placed in a neck brace, and was strapped to a backboard for the ambulance ride to the hospital. He testified to having his wounds attended to in the hospital and coming home with a "special shoe" and crutches. He testified that later that winter, he was diagnosed with a "sprung" ankle at an orthopedic center. As a result, Ben Anderson testified that he missed school, outings with friends, and sports and received physical therapy for his leg.

¶ 18        Tamika Anderson testified that she arrived on the scene after the police had arrived and after at least some family members had been taken away by ambulance. She observed one of her daughters in an emergency room with an IV, some scratches, and complaints of pain and inability to breathe. She testified that another of her daughters was being treated for

-4-

difficulty breathing and had no visible signs of injury. Tamika Anderson brought both daughters to the family physician for a follow-up visit because of continuing pain and breathing trouble. She testified that her other three children complained of pain after the collision and also required followup visits. She did not testify as to the results of these followup visits. On cross-examination, Tamika Anderson admitted that one of her daughters had previously been treated for asthma.

¶ 19     As part of his case in chief, Fratto testified that Anderson's car flipped over onto its driver's side, but did not flip two or three times as previous witnesses had testified. Fratto also testified that after the collision, he left his vehicle and helped a group of witnesses push the vehicle back upright, at which time he heard screaming and crying from the vehicle.

¶ 20                            3. Jury Instructions and Verdict

¶ 21     After closing the evidence, the judge received jury instructions and verdict forms agreed to by the parties. No party objected to any instruction or form. At closing argument, the attorneys for each side highlighted the alleged inconsistencies of various witnesses, particularly Sean Anderson. Each side's attorney also highlighted the allegedly dangerous behavior of the opposing party. Fratto's attorney alleged that Sean Anderson was trying to run the light after the signal had given way from a green turn arrow to a general green signal for all lanes. The passenger plaintiffs' and Sean Anderson's attorneys argued that Fratto was speeding through the intersection without keeping a lookout for other vehicles. Attorneys for the defendants argued a lack of evidence of the passenger plaintiffs' injuries, including an absence of diagnosis or follow-up treatment. After closing arguments, the judge read the instructions to the jury, including forms that allowed the jury to find "for the Plaintiff[ ] passengers and against any of the Defendants," as well as "for both Defendants and against the Plaintiff[ ] passengers."

¶ 22     The jury rendered unanimous verdicts for defendant Fratto against plaintiff Sean Anderson, and for defendants Fratto and Sean Anderson against the passenger plaintiffs.

¶ 23     The passenger plaintiffs filed a posttrial motion seeking a new trial, arguing that the jury verdict did not logically follow the evidence. The motion cited no case law or statute to support this claim, although the passenger plaintiffs argued that one or both defendants should be liable for at least the emergency room expenses of the minor children involved in the collision. Sean Anderson responded that the verdict was not legally inconsistent, nor was the verdict against the manifest weight of the evidence because a contrary verdict is not "clearly evident." Sean Anderson argued that the jury could have found against the passenger plaintiffs based on the insufficient evidence shown of injury. Sean Anderson did not file a motion for a new trial in his claim against Fratto. Counsel for Fratto stated that "the jury could easily have found that the Plaintiff did not sustain her burden."

¶ 24     The trial court granted the motion for a new trial in the plaintiff passengers' case, ruling that "[t]he jury's finding that neither [was] negligen[t] given the facts of this case is unreasonable and against the manifest weight of the evidence." The trial court reasoned that "[t]he jury had the discretion of apportioning the fault between the two parties," but "[a] wash of liability is not an option when the injured is not an active participant in the cause of

the incident."

¶ 25                                    ANALYSIS

¶ 26    Fratto and Sean Anderson appeal, contending that: (1) the jury verdicts were not legally inconsistent as a matter of law and (2) the trial court abused its discretion in granting a new trial because the verdicts were not against the manifest weight of the evidence. We address each argument in turn.

¶ 27            1. Whether the Jury's Verdicts Are Legally Inconsistent

¶ 28                        a. *Inconsistent Verdicts Generally*

¶ 29    Fratto and Sean Anderson challenge the trial court's finding that the verdicts are legally inconsistent. Fratto relies on *Redmond v. Socha*, 216 Ill. 2d 622 (2005), the Illinois Supreme Court's most recent ruling on the issue of inconsistent jury verdicts. Under *Redmond*, "whether two verdicts are legally inconsistent is a question of law," subject to *de novo* review. *Id.* at 642.

¶ 30    Issues of proof aside, verdicts may be inconsistent if a jury returns two verdicts based on the same underlying facts but comes to conflicting conclusions in each count. *Redmond*, 216 Ill. 2d at 650. For example, the Illinois Supreme Court overturned a set of verdicts where a jury found defendants liable in their individual capacities, but also found on the same set of facts that the defendants were acting as corporate officers. *Wottowa Insurance Agency, Inc. v. Bock*, 104 Ill. 2d 311, 316 (1984).

¶ 31    In *Redmond*, two drivers sued each other for injuries resulting from a vehicle collision. *Redmond*, 216 Ill. 2d at 626. The jury found against each party, using jury forms provided by the parties. *Id.* at 627. The trial court granted the motion for a new trial because it found that the facts indicated that one or the other party must be liable, and the appellate court affirmed. *Id.* at 629-30. The supreme court reversed, finding that the verdicts were not inconsistent because the facts supported a reasonable hypothesis that neither party proved its case. *Id.* at 651.

¶ 32    *Redmond*, *Barrick v. Grimes*, 308 Ill. App. 3d 306 (1999), and other cases cited by Fratto and Sean Anderson are missing a key element of analysis that is relevant to the present case. Those cases involved cross-suits between drivers in multivehicle collisions, each of whom alleged that the other was negligent. In this case, we must address the burdens of proof between innocent, injured parties who sued multiple potential tortfeasors. This raises the issue of alternative liability.

¶ 33                        b. *Alternative Liability in Illinois*

¶ 34    The Supreme Court of Illinois has indicated that alternative liability "may apply" in cases where all potentially liable parties are joined as defendants. *Smith v. Eli Lilly & Co.*, 137 Ill. 2d 222, 235 (1990) ("Alternative liability may apply when two or more defendants act tortiously toward a plaintiff who, through no fault of her own, cannot identify which one of the joined defendants caused the injury. The burden of proof shifts to each defendant to prove

-6-

his innocence."). In *Smith*, the court rejected the application of alternative or market share liability to DES birth defect cases, where it was too difficult to apply the doctrine to a large number of potential tortfeasors, some of which were not added as defendants. *Id.* at 235, 257.

¶ 35    This court has previously addressed the doctrine of alternative liability in *Wysocki v. Reed*, 222 Ill. App. 3d 268 (1991), and *Millette v. Radosta*, 84 Ill. App. 3d 5 (1980). In *Wysocki*, the circuit court dismissed a complaint by a surviving spouse against two drug manufacturers, either one of whom might have been responsible for her husband's death. *Wysocki*, 222 Ill. App. 3d at 269. The appellate court reversed, applying the alternative liability rule in the Restatement (Second) of Torts:

> "Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each actor to prove that he has not caused the harm." (Internal quotation marks omitted.) *Id.* at 269 (quoting Restatement (Second) of Torts § 433B(3) (1965)).

*Wysocki* dealt only with whether the complaint could survive a motion to dismiss, so the court did not reach the issue of whether the drug manufacturers would be jointly and severally liable at the close of trial.

> "Acceptance of alternative liability in this case does not mean that, if the manufacturers of the drugs were the defendants before the court, they would be delivered trussed and gagged for the enrichment of the plaintiff. The plaintiff must still prove that the manufacturers failed to provide adequate warnings and that the injuries suffered by her husband were, in fact, caused by heparin." *Id.* at 278.

Thus, *Wysocki*'s application of alternative liability does not shift the burden of proof for causation or negligence onto the defendants until plaintiff has proven its case by a preponderance of the evidence.

¶ 36    *Millette* involved a suit by a truck driver against several parties, including the driver of a car, the dealership that sold the car, and the manufacturer of the car. *Millette*, 84 Ill. App. 3d at 7. The evidence clearly pointed to a vehicle defect, although the defendant driver failed to get the defective part replaced prior to the collision. *Id.* at 9-10. Based on the weight of the evidence, the trial court directed the jury that the defendant driver was contributorily negligent, but plaintiff truck driver was not. *Id.* at 18. Over the objections of all defendants, the trial court also "instructed the jury it must find for plaintiff and against 'one or more of the defendants' and refused to submit a jury form allowing the jury to find all defendants not guilty." *Id.* As a result, the jury found for the plaintiff and against all three defendants, who appealed. *Id.* The appellate court affirmed, finding that a verdict in favor of the defendants could never stand because plaintiff was found as a matter of law not to be contributorily negligent. *Id.* at 27.

¶ 37    *Millette* relied on a line of Illinois cases that automatically shifts the burden of proving negligence and causation in a vehicle collision, so long as plaintiff presents a *prima facie* case that at least one defendant must have been negligent. In *Krump v. Highlander Ice Cream Co.*, 30 Ill. App. 2d 103 (1961), a building owner sued the drivers of two vehicles after a collision between them resulted in damage to the plaintiff's building. The appellate court

held:

> "[A] presumption of negligence does arise when the occurrence is shown to proceed from a performance of acts of such character, that when due care is taken, no injury ordinarily results from it. An automobile properly operated does not, under normal conditions, collide with another automobile or strike a building. Where two automobiles collide, under normal conditions, it will be presumed that the collision occurred from the negligent operation of *one* or *both* colliding automobiles." (Emphasis added.) *Id.* at 105-06.

Under *Krump*, after a plaintiff makes a *prima facie* case of the defendants' negligence, the burden shifts as to both negligence and causation, and the plaintiff need not submit evidence as to which defendant was negligent. *Id.* at 106. Other cases from this era state substantially the same rule. See*, e.g.*, *Turner v. Cummings*, 319 Ill. App. 225, 227 (1943) ("[w]here an accident results from the operation of two vehicles, controlled and operated by defendants, in the absence of an explanation it will be presumed that the collision arose from the want of proper care") and *Pearlman v. W.O. King Lumber Co.*, 302 Ill. App. 190, 194 (1939) (finding that the jury must find at least one defendant guilty because "the presumption of negligence does arise where the accident is shown to proceed from an act of such a character that when due care is taken in its performance no injury ordinarily results from it").

¶ 38        *Krump*, *Turner*, and *Pearlman* apply a *res ipsa loquitor* analysis to multivehicle collisions. Although none of these cases has been expressly overruled, they were decided before the theory of alternative liability arose from the Restatement rule. More recent cases have adopted alternative liability in multivehicle collisions, ruling that the plaintiffs must show negligence by a preponderance of the evidence rather than a *prima facie* case. For example, in *Korpalski v. Lyman*, 114 Ill. App. 3d 563 (1983), this court found that the evidence overwhelmingly favored a presumption of negligence against the defendant driver and affirmed a directed verdict as to negligence. *Id.* at 566-67. "Where a substantial factual dispute is disclosed by the evidence, however, the question of plaintiff's due care or defendant's negligence should be given to the jury for determination." *Id.* at 566 (citing *Wolfe v. Whipple*, 112 Ill. App. 2d 255, 265 (1969)). In *Cusick v. Clark*, 45 Ill. App. 3d 763 (1977), this court found that a driver who struck a non-negligent three-year-old pedestrian was not negligent as a matter of law. *Id.* at 767. Instead, the court found that "[t]he mere occurrence of an automobile accident in which a child is injured does not give rise to an inference of negligence on the part of a motorist. It remains the plaintiff's burden to prove the motorist's negligence and his responsibility for the plaintiff's injuries." (Internal quotation marks omitted.) *Id.* at 768 (quoting *Hall v. Randell*, 26 Ill. App. 3d 505, 509 (1975)).

¶ 39        Alternative liability has not been applied in Illinois to a vehicular tort case like the case at bar, which involves a two-vehicle collision with passengers who alleged injuries.


¶ 40                          c. *Alternative Liability in Other Jurisdictions*

¶ 41        Other jurisdictions have addressed the issue of alternative liability in tort cases with facts similar to the instant case. See *Porterie v. Peters*, 532 P.2d 514 (Ariz. 1975); *Cuonzo v.*

*Shore*, 958 A.2d 840 (Del. 2008); *Dennard v. Green*, 643 A.2d 422 (Md. 1994); *Thodos v. Bland*, 542 A.2d 1307 (Md. Ct. Spec. App. 1988); *Burke v. Schaffner*, 683 N.E.2d 861 (Ohio Ct. App. 1996); *Peck v. Serio*, 3009-Ohio-6561, 801 N.E.2d 890. In each of these cases, two or more drivers were brought as defendants in a vehicle collision case by an innocent party that alleged injuries from the collision. In each case, the court found that the doctrine of alternative liability did not relieve the plaintiff of the burden of proving the negligence of each driver.

¶ 42        Instead, several cases noted an exception to the Restatement section 433B(3), expressed in comment g:

> "The rule stated in Subsection (3) applies only where it is proved that each of two or more actors has acted tortiously, and that the harm has resulted from the conduct of some one of them. On these issues the plaintiff has still the burden of proof. The rule stated has no application to cases of alternative liability, where there is no proof that the conduct of more than one actor has been tortious at all. In such a case the plaintiff has the burden of proof both as to the tortious conduct and as to the causal relation." Restatement (Second) of Torts § 433B(3), cmt. g.

To shift the burden of proving which defendant was responsible for causing plaintiff's injury, this exception would require a tort plaintiff to prove that *both defendants acted negligently* and the plaintiff cannot determine which defendant caused the plaintiff's injury. In *Thodos*, Maryland's Court of Special Appeals ruled that "although there is an allegation that both defendants were negligent, there is no proof that more than one actually was ***. The significant issue at the trial of this case was which one of the defendants was negligent. Therefore, appellant retained the burden of proof as to both the negligence of each defendant and its causal relationship to her injuries." *Thodos*, 542 A.2d at 1315. Ohio has adopted the rule of alternative liability*,* emphasizing that "plaintiff must still prove: (1) that two or more defendants committed tortious acts, and (2) that plaintiff was injured as a proximate result of the wrongdoing of one of the defendants. Only then will the burden shift to the defendants to prove that they were not the cause of plaintiff's injuries." *Minnich v. Ashland Oil Co.*, 473 N.E.2d 1199, 1200 (Ohio 1984) (holding that the doctrine "does not apply in cases where there is no proof that the conduct of more than one defendant has been tortious").

¶ 43                    d. *Burden of Proof in the Case at Bar*

¶ 44        We agree with the reasoning stated in *Smith*, the Restatement § 433B(3), *Wysocki*, and courts in other jurisdictions that have ruled on factually similar cases. We believe, as did the *Wysocki* court, that the *Smith* decision indicates an approval of alternative liability in cases like the one before this court. The doctrine of alternative liability justly shifts the burden of causation to negligent tortfeasors. However, an innocent plaintiff still must prove that each tortfeasor was negligent before the doctrine will shift the burden of proving causation. *Wysocki*, 222 Ill. App. 3d at 278; Restatement (Second) of Torts § 433B(3), cmt. g.

¶ 45        In this case, the jury apparently found that the passenger plaintiffs did not prove the negligence of either Fratto or Sean Anderson, or both, by a preponderance of the evidence. The evidence was contested and the jury could have believed any of multiple versions of

events. At trial, witnesses presented facts that conflicted with each other or, at times, previous statements made by the same witness. For example, both Fratto and Sean Anderson claimed that they had the green light or arrow and that the other's light must have been red. Sean Anderson claimed he told Officer Rodriguez that he had the green arrow, although Officer Rodriguez's record of the collision does not support that claim. The parties also contested how many vehicles were ahead of Sean Anderson in the left-turn lane when he pulled up to the intersection: Fratto claimed there were none, and Sean Anderson alternately claimed there were "about two" or four. The occupants of the Anderson vehicle also seemed in dispute about whether the passengers were wearing seat belts or not, which could have affected whether the jury found that the passenger plaintiffs proved their injuries. Sean Anderson claimed that all passengers were belted in their seats, but Ben Anderson's testimony alleges that the passengers "were all packed together as the car flipped over," suggesting that the passengers were not belted and were falling freely within the cabin. The parties contested whether the van flipped one, two, or three times. The parties also disputed the injuries to the passenger plaintiffs, with Fratto especially arguing that the passenger plaintiffs had failed to prove with certainty that the collision actually caused any injury to any party. On appeal, Fratto noted that the only passenger plaintiff who claimed to have been treated for injuries, Ben Anderson, was not noted in Officer Rodriguez's log as a crash victim. (Fratto Br. 16.) Finally, there seems to be a dispute among the parties even as to how many passengers were in the vehicle: Sean Anderson and the passenger plaintiffs allege that there were six, but Officer Rodriguez's report showed only five, as elicited by Sean Anderson's attorney during his case in chief. Any of these inconsistencies could have impacted the jury's impression of credibility, negligence, and injuries.

¶ 46    Significantly, the passenger plaintiffs brought no evidence at trial to show Sean Anderson's negligence. The medical evidence did not sufficiently prove the extent or cause of injuries. Sean Anderson and the passenger plaintiffs brought evidence against Fratto, but no party moved for a finding of negligence as a matter of law. For all these reasons, the jury could have found that the passenger plaintiffs failed to prove by a preponderance of the evidence that both Fratto and Sean Anderson were negligent. This prevents application of the doctrine of alternative liability and its shift of the burden of proving causation.

¶ 47                                e. *Verdicts Were Not Inconsistent*

¶ 48    Having found that the doctrine of alternative liability does not shift the burden of proving negligence or causation in this case, we finally turn to whether the jury's verdicts were legally inconsistent. In cases that involve multiple causes of action, as does the case at bar, *Redmond* emphasized that each plaintiff must meet his or her burden of proof with respect to each element of each claim. *Redmond*, 216 Ill. 2d at 644. As a result, "a jury may find against both the defendant and the counterplaintiff in a negligence action, even when the evidence suggests that the sole cause of the accident was the negligence of either or both parties." *Id.* at 646. Instead, "the court will exercise all reasonable presumptions in favor of the verdict or verdicts, which will not be found legally inconsistent unless absolutely irreconcilable." *Id.* at 643-44 (citing *Tedeschi v. Burlington Northern R.R. Co.*, 282 Ill. App. 3d 445, 448-49 (1996)). Another vehicle collision case, *Barrick*, affirmed a jury verdict

against both driver defendants, finding that the "jury may well have felt that the evidence of which vehicle had the green light was so conflicting, inconclusive, and unsatisfactory that it simply could not determine from the evidence presented which party was negligent." *Barrick*, 308 Ill. App. 3d at 310.

¶ 49　In this case, the verdicts were not legally inconsistent. The verdicts did not conflict as to some element or fact, such that the jury found one party to be both negligent and not negligent at the same time. All parties, including the passenger plaintiffs, agreed to jury instructions that clearly contemplated the outcome they now complain of, a verdict for both defendants and against them. A party cannot later complain that its requested jury instructions were inconsistent. *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 436 (1992); *Bernier v. Illinois Central R.R. Co.*, 296 Ill. 464, 472 (1921). "It is only where Illinois Pattern Jury Instructions do not accurately state the applicable law that the court may give another instruction." *Korpalski*, 114 Ill. App. 3d at 568 (citing *Ryan v. Fleischman*, 64 Ill. App. 3d 75 (1978)). The instructions in this case were in accordance with the law. As was the case in *Barrick*, *Redmond*, and the alternative liability cases from other jurisdictions, the evidence was inconclusive. There was no jury verdict that either Fratto or Sean Anderson was negligent. Instead, the verdicts were that Sean Anderson did not prove his case against Fratto, and the passenger plaintiffs did not prove their case against either Fratto or Sean Anderson. These verdicts are not inconsistent. It may be the case that the jury simply felt that there was insufficient evidence presented as to negligence, causation, injury, or all three.

¶ 50　We therefore reverse the trial court's finding that the jury's verdicts are legally inconsistent.

¶ 51　2. Order Granting New Trial

¶ 52　Having found that the verdicts are not legally inconsistent in this case, we turn to the question of whether the trial court abused its discretion in granting a new trial. " 'A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary, and not based upon any of the evidence.' " *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992) (quoting *Villa v. Crown Cork & Seal Co.*, 202 Ill. App. 3d 1082, 1089 (1990)). "[W]here there is sufficient evidence to support the verdict of the jury, it constitutes an abuse of discretion for the trial court to grant a motion for a new trial." (Internal quotation marks omitted.) *Redmond*, 216 Ill. 2d at 651 (quoting *Maple*, 151 Ill. 2d at 456). Substantial deference must be given to the jury, which has weighed the testimony and credibility of witnesses:

> "The trial court, when ruling on a motion for a new trial, may not 'reweigh the evidence and set aside a verdict merely because the jury could have drawn different inferences or conclusions, or because the court feels that other results are more reasonable.' " *Redmond*, 216 Ill. 2d at 652 (quoting *Maple*, 151 Ill. 2d at 452).

¶ 53　The jury's verdict was not against the manifest weight of the evidence, as the jury could reasonably have determined that the passenger plaintiffs failed to prove their case against Fratto and Sean Anderson. The trial court abused its discretion by setting aside the jury verdict and granting the passenger plaintiffs' motion for a new trial.

-11-

¶ 54                            CONCLUSION

¶ 55        Based on the foregoing, we reverse the judgment of the circuit court of Cook County.

¶ 56        Reversed.